No. 58,725

STATE OF KANSAS, *Appellant,* v. LEROY L. WILLCOX, *Appellee.*

(729 P.2d 451)

Opinion filed December 5, 1986.

*Geary N. Gorup,* assistant district attorney, argued the cause, and *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for appellant.

*John E. Cowles,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, was on the *amicus curiae* brief for Robert W. Armstrong.

The opinion of the court was delivered by

MCFARLAND, J.: Leroy L. Willcox was acquitted in a jury trial of two counts of murder in the second degree (K.S.A. 21-3402). The State brings this appeal therefrom on four questions reserved.

In *State v. Holland,* 236 Kan. 840, 696 P.2d 401 (1985), we iterated the general rules relative to appeals on questions reserved as follows:

"It has long been the rule of this court that questions reserved by the State in a criminal prosecution will not be entertained on appeal merely to demonstrate whether or not error has been committed by the trial court in its rulings adverse to the State. *State v. Crozier,* 225 Kan. 120, 123, 587 P.2d 331 (1978); *State v. V.F.W. Post No. 3722,* 215 Kan. 693, 695, 527 P.2d 1020 (1974); *State v. Chittenden,* 212 Kan. 178, Syl. ¶ 1, 510 P.2d 152 (1973); *State v. Kopf,* 211 Kan. 848, 508 P.2d 847 (1973); *State v. Glaze,* 200 Kan. 324, Syl. ¶¶ 1 and 2, 436 P.2d 377 (1968). As we noted in *Glaze,* appeals on questions reserved by the State have generally been accepted where they involve questions of statewide interest important to the correct and uniform administration of the criminal law. The decisions have been of such a nature as to serve as a guide in future trials where the same or similar issues are likely to arise. In these cases we have frequently interpreted statutes, sometimes recently enacted, which had not previously been before this court. We have uniformly declined to entertain questions reserved, the resolution of which would not provide helpful precedent. See *Chittenden, Kopf* and *Glaze.*" 236 Kan. at 841.

Upon careful review, we conclude that only one of the questions reserved meets these criteria. We therefore decline to entertain all but one of the questions reserved.

This question is whether or not the trial court erred in excluding the defendant's testimony from a previous trial when offered by the State to corroborate the testimony of its key witness. The defendant has been brought to trial four times for the 1979 killings of Donald and Norma Earl. The first two trials ended in mistrials. Defendant was convicted of second-degree murder in the third trial, but a new trial was granted when the trial court determined that the State had withheld certain information from defense counsel relative to the totality of the inducements offered by the State to its key witness (Cecil Stembridge). More particularly, defense counsel had been advised that the State had granted immunity from prosecution to Stembridge relative to the Earl homicides but did not advise defense counsel that, as a part of the package, certain juvenile charges against Stembridge's son had been dismissed. The charges against the son were wholly unrelated to the Earl homicides. In his third trial defendant had testified, but he did not testify in his fourth trial. The trial court refused to permit the State to introduce defendant's third trial testimony into the fourth trial.

In order to understand the significance of this ruling upon the State's case, some facts must be set forth in some detail. The Earls disappeared on June 2, 1979. In 1983, Stembridge was arrested in Texas on a kidnapping charge and was questioned about the disappearances of the Earls. Eventually, he was granted immunity relative to the Earls and led law enforcement officers to the grave of the Earls in rural Sedgwick County. He stated that he saw defendant and Robert W. Armstrong kill the Earls on June 2, 1979, in defendant's home by strangling them with an automobile jumper cable. Stembridge then assisted the two men in burying the bodies. The motive for the slayings was revenge against Donald Earl for having informed against Armstrong in a criminal check-writing scheme. Armstrong and defendant were partners in certain activities.

In his testimony in his third trial, defendant agreed the Earls had been present in his home at approximately June 2, 1979, but denied any knowledge of their deaths. Defendant's testimony

thus corroborated Stembridge's testimony in one highly significant respect. *Without defendant's testimony, Stembridge's testimony was virtually uncorroborated* in tying defendant to the Earls' disappearances. The Earls were not seen alive after the evening of June 2, 1979, and defendant had admitted the Earls, himself, Armstrong, and Stembridge had all been together at his home on or about June 2, 1979.

In *State v. Simmons*, 78 Kan. 852, 98 Pac. 277 (1908), this court took up the issue of whether the Constitution is violated by the prosecution's use of a defendant's testimony at a subsequent retrial. The defendant in that case argued that under the Constitution he could not be compelled to be a witness against himself, and a reading of his earlier testimony would be just that. This court rejected the argument, stating:

"Where a defendant on trial on a charge of felony voluntarily goes upon the witness-stand and testifies in reference to his connection with the offense charged and the circumstances connected therewith, and after judgment procures a new trial, his evidence, properly identified and reduced to writing by a stenographer at the first trial, may be introduced in evidence by the state upon the second trial." Syl. ¶ 1.

See *State v. King*, 102 Kan. 155, 169 Pac. 557 (1917), and *State v. Taylor*, 36 Kan. 329, 13 Pac. 550 (1886).

In *Powers v. United States*, 223 U.S. 303, 56 L. Ed. 448, 32 S. Ct. 281 (1912), the defendant's testimony at a preliminary hearing was held properly admitted in the subsequent trial. Rejecting the defendant's claim against his Fifth Amendment privilege against self-incrimination, the U.S. Supreme Court stated:

"In the present case, it does not appear that the witness claimed his privilege, or was ignorant of it, or that if he had known of it would not have answered—indeed, the record shows that his testimony was *entirely voluntary* and understandingly given. Such testimony cannot be excluded when subsequently offered at his trial." (Emphasis supplied.) 223 U.S. at 314.

See *Edmonds v. United States*, 273 F.2d 108, 112-13 (D.C. Cir. 1959), and cases cited therein.

Kansas appellate decisions have held that neither federal nor state constitutions were violated by the introduction at a criminal trial of the defendant's former testimony *voluntarily given* at an inquisition, *State v. McCarbrey*, 152 Kan. 18, 20-23, 102 P.2d 977 (1940), or at a coroner's inquest, *State v. Finch*, 71 Kan. 793, 795, 81 Pac. 494 (1905). This court has also permitted the use of prior exculpatory testimony by a defendant in conjunction with an

inconsistent statement by the same defendant where relevant to a material issue at trial to show consciousness of guilt or unlawful intent. *State v. Norwood*, 217 Kan. 150, Syl. ¶ 1, 155-56, 535 P.2d 996 (1975).

The general rule permitting introduction of a criminal defendant's prior testimony has an exception to it where the prior testimony was not given voluntarily. The leading case relative to this exception is *Harrison v. United States*, 392 U.S. 219, 20 L. Ed. 2d 1047, 88 S. Ct. 2008 (1968). In *Harrison*, defendant's confession was introduced in a prior trial. Later the confession was deemed improperly admitted and the case was remanded for retrial. The prosecution introduced defendant's prior testimony in the new trial, and defendant was again convicted. The question then became whether the prior testimony had been compelled by the admission of the improper confession and thus was not testimony voluntarily given. The U.S. Supreme Court reversed on the ground that the government had not demonstrated "that the petitioner's testimony was obtained 'by means sufficiently distinguishable' from the underlying illegality 'to be purged of the primary taint.' " 392 U.S. at 226. The question, the court declared,

"is not *whether* the petitioner made a knowing decision to testify, but *why*. If he did so to overcome the impact of confessions illegally obtained and hence improperly introduced, then his testimony was tainted . . . ." 392 U.S. at 223.

The *Harrison* court felt it necessary to inquire into the motives of a defendant to testify at his trial. It reasoned:

"The remaining question is whether the petitioner's trial testimony was in fact impelled by the prosecution's wrongful use of his illegally obtained confessions. It is, of course, difficult to unravel the many considerations that might have led the petitioner to take the witness stand at his former trial. But, having illegally placed his confessions before the jury, the Government can hardly demand a demonstration by the petitioner that he would not have testified as he did if his inadmissible confessions had not been used. 'The springs of conduct are subtle and varied,' Mr. Justice Cardozo once observed. 'One who meddles with them must not insist upon too nice a measure of proof that the spring which he released was effective to the exclusion of all others.' Having 'released the spring' by using the petitioner's unlawfully obtained confessions against him, the Government must show that its illegal action did not induce his testimony." 392 U.S. at 224-25.

The trial court, in denying the State's proffer of the defendant's prior testimony, reasoned that, since the conviction in the third trial had been set aside and a new trial granted as a result of the State's misconduct in not advising defense counsel as to that part

of the Stembridge "package" which involved dismissal of the juvenile court proceedings against Stembridge's son, it would constitute "basic unfairness" to permit the State to introduce the defendant's prior testimony into the fourth trial and would unconstitutionally compel defendant to be a witness against himself. The trial court did not specifically address the question of whether or not the prior testimony had been voluntarily given.

We conclude that the trial court erroneously excluded the defendant's prior testimony herein. The general rule is that such testimony is admissible. The facts herein do not come within the exception to that rule set forth in *Harrison v. United States*, 392 U.S. 219. Evidence was not improperly admitted in the third trial which compelled defendant's testimony so as to make such testimony involuntary. The dismissal of the juvenile proceedings against Stembridge's son was only another arrow in a large quiver of impeachment weaponry available to defense counsel for use against Stembridge's credibility.

The appeal is sustained.