No. 80,385

STATE OF KANSAS, *Appellee*, v. KENNETH MASON, *Appellant*.

(986 P.2d 387)

Opinion filed October 29, 1999.

*Kirk Christopher Redmond*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the briefs for appellant.

*Mary Ann Shirley*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Kenneth Mason appeals his conviction of criminal solicitation of murder. He was sentenced to 85 months' imprisonment. The appeal was transferred to this court from the Court of Appeals pursuant to K.S.A. 20-3018.

Mason was a prisoner in the Greenwood County Jail. When an inmate is brought into that jail, he or she is advised that mail is "subject to inspection if it's not legal." Legal mail includes mail addressed to attorneys.

Mason's first attempt to falsely label a letter as legal mail was detected by Deputy Winfrey. Mason sealed, stamped, and placed

in outgoing mail an envelope addressed to "Sam Smith, Attorney at Law, 510 N. Pine, Eureka, KS 67045." Winfrey knew 510 N. Pine was a trailer, and he knew of no attorney in Eureka named Smith. He confronted Mason, who admitted that the letter was not to an attorney.

When Winfrey several days later saw that Mason was sending another letter addressed to someone named Smith and marked as legal mail, he turned it over to Sergeant Soule. It was addressed as follows: "Smith Law Office, c/o Kevin Lee Smith, 801 S. Lake forest, S.A., TX 78239."

An employee in the Greenwood County Sheriff's Office attempted to verify that there was a Smith Law Office in San Antonio. She called directory assistance, and she called the law enforcement center in San Antonio for assistance. Neither could provide any information about a Smith Law Office or an attorney named Kevin Lee Smith.

Soule opened the envelope to see whether it contained legal mail. The letter stated:

"Tambering Earl pass, yours is what?

---

"Kevin                                        5/22/96
"What's the fuckes up with you? me, I'm in jail in greenwood county [portion deleted]. It's all bull shit, that girl that came down there with me put me in jail because I was leaving her again. I am being held on a 50,000.00 bond that is outrages amount of bond isn't it. I need someone to take her out, because of what she knows. Can you do it or get someone to do it for me. I will return the favor ten folds. You told me one time that if I needed help you would help and know I am asking for help to get bond up to get me out or to take her out. You pick the way you wish to help me. You now I would do it for you if you asked so, I'm asking for your help. I wish I didn't have to ask you but your a brother and I now you will do it for me like I would do it for you. write back to me as soon as you get this letter and tell me what you are going to do. Us the same return address like I address it to you the jail can't open legal mail from an Attorney it would be best if you could type the address on the envolepe to make it look like it's from a law office, I wish. I didn't have to ask you to do this for me but you are the only one from the south that I can count on to do this for me. Your brother said, big brother, that if I had a hit to let hem help so let hem help on this one and my next hit I'll take hem to, if he wants to go. I have some I have to do when I get out. be smart about it. If you have someone you need gone and you do this for me it will be my plesher to do it for you, for free. I will get you a picture and all

the other information you need. Also a places to stay will your up here. bring a bus up here and I'll have someone pick you up at the bus stop. get back with me and till me yes or no. Us the return pass word in your letter o.k. Tambering Earl.

"G.W.C. Jail                            Souther brother
Eureka, KS                            · Ken Mason
67045."

Mason first challenges the constitutionality of K.S.A. 21-3303(b) (criminal solicitation). He concedes the issue was not raised in the trial court. Where constitutional grounds are raised for the first time on appeal, they are not properly before this court for review. *State v. Shears*, 260 Kan. 823, 837, 925 P.2d 1136 (1996). We may consider such issues in exceptional circumstances where the asserted error involves a strictly legal question that will be determinative of the case or where consideration of the new issue is necessary to serve the interests of justice or to prevent a denial of fundamental rights. *State v. Bell*, 258 Kan. 123, Syl., 899 P.2d 1000 (1995). Mason contends his case is such an exceptional circumstance and should be considered by this court. We disagree. Although the issue is a legal one, Mason's argument is without merit and his cited authority neither relevant nor applicable. We therefore conclude that the constitutionality of K.S.A. 21-3303(b) is not properly before this court and will not be considered in this appeal.

Mason next argues that there was insufficient evidence of intent to support the conviction of criminal solicitation of murder. "When the sufficiency of the evidence is challenged, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Abel*, 261 Kan. 331, 337, 932 P.2d 952 (1997).

Mason wrote to his friend: "I am asking for help to get bond up to get me out or to take her out. You pick the way you wish to help me." He contends that this alternative request will not satisfy the intent requirement for the crime of solicitation. He points out that raising bond is not a crime. Thus, Mason's friend could have complied with the request without engaging in an illegal activity. He contends that his offering Smith a noncriminal alternative is incon-

sistent with a finding that he intended for Smith to kill the former girlfriend.

No cases specifically involving alternative requests have come to the court's attention. In *State v. DePriest*, 258 Kan. 596, 604, 907 P.2d 868 (1995), the court stated that the specific intent involved was the defendant's intent that the other person commit the solicited crime. The jury found in this case that Mason intended for Smith to commit murder. Simply as a matter of logic, it does not seem that Mason's giving Smith an option should affect that finding because the choice does not change the fact that Mason intentionally asked Smith to commit murder. If Smith had murdered the former girlfriend, he would have been carrying out the act intended by Mason. We find the evidence sufficient to support Mason's conviction of criminal solicitation.

Mason also contends that the letter written by him was improperly admitted into evidence. Mason sought to have his letter to Smith suppressed on the ground that its seizure violated the First, Fifth, and Sixth Amendments to the federal Constitution. The trial judge denied the motion to suppress. He noted that an attempt to verify that Kevin Smith was an attorney in San Antonio, Texas, was unsuccessful. He believed that the negative results of that inquiry raised a serious question whether the letter was legal mail entitled to particular protection and thereby justified opening it.

The facts material to a decision on the motion to suppress are not in dispute. The question whether the evidence should have been suppressed is a question of law. This court's review of questions of law is unlimited. *State v. Anderson*, 259 Kan. 16, 18, 910 P.2d 180 (1996).

Mason's principal contention on appeal seems to be that his letter should not have been opened out of his presence. For this proposition, he cites a number of cases involving real legal mail rather than bogus legal mail. For example, he quotes the following from *Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir. 1981): "*[M]ail to or from an inmate's attorney* and identified as such may not be opened for inspections for contraband except in the presence of the prisoner." (Emphasis added.) He asserts that the options available to the jailer were to refuse to send the letter, open

it in the presence of the inmate, or require the lawyer to identify himself to jail officials. He also raises but does not pursue the idea that the jailer should have obtained a search warrant before opening the letter.

The United States Supreme Court has approved restrictions on the right of an inmate to send mail. In *Procunier v. Martinez*, 416 U.S. 396, 40 L. Ed. 2d 224, 94 S. Ct. 1800 (1974), the Court established that prison rules regarding outgoing mail may provide for it to be opened and inspected. The standard to be applied to censorship of prisoner mail is the following: First, the regulation or practice must further one or more of the substantial governmental interests of security, order, and rehabilitation. Second, the limitation must be no greater than is necessary for the protection of the governmental interest involved. 416 U.S. at 413. Subsequent lower court cases involving outgoing mail are divided on the question whether good cause is required for reading it. See 2 Mushlin, Rights of Prisoners § 13.02, pp. 128-29 (2d ed. 1993).

*Gassler v. Wood*, 14 F.3d 406 (8th Cir. 1994), stands for the principle that prisoners' outgoing mail may be screened for information on future criminal activities. Authorities believed that inmates Gassler and Scott might use the mail for the purpose of intimidating and harming prospective witnesses against them. The warden authorized monitoring of their nonlegal correspondence, which was opened and photocopied before being sent on to the intended recipients. The copies were given to the law enforcement officer most familiar with the charges pending against the inmates. The Eighth Circuit Court of Appeals found nothing amiss in the prison's practice. With no discussion of the grounds for the belief that the inmates might use their correspondence for criminal purposes, the court concluded:

"Given the very serious nature of the suspected conduct, it was a sensible and justifiable precaution for the authorities to let Agent Lowen see the letters. Even under a strict and literal reading of *Martinez*, and without reference to other cases, we have no doubt that prison officials were entitled to enlist Agent Lowen's expertise in screening the letters for the purpose of ascertaining whether appellants were engaging in the type of criminal activity that Agent Lowen feared." 14 F.3d at 409-10.

The present case differs from *Martinez* and *Gassler* in that Mason's letter was not opened as a matter of course or at the request of a law enforcement officer in charge of an ongoing criminal investigation. Instead, it was opened to determine whether, as was suspected, it was falsely labeled as legal mail. The jailer's suspicion was aroused when Mason admitted misusing the legal mail label on a letter addressed to Sam Smith in Eureka, Kansas. A few days later Mason posted another letter addressed to an attorney named Smith and marked legal mail. This time the addressee was in San Antonio, Texas. An effort to locate an attorney named Kevin Smith in San Antonio was unsuccessful. Only then was the envelope opened. It did not contain legal mail.

Mason argues that "[t]he jail does have several viable options which will prevent prisoner abuse of legal mail. Jailers can refuse to send the letter, can open it in the presence of the inmate to check for contraband, or can require that the lawyer to whom the letter is addressed [to] first identify himself or herself to jail officials." Even assuming Mason is correct, this was the second attempt in the course of a few days to violate the mail regulations by falsely marking a letter as legal mail. Since the lawyer was fictitious, he obviously could not identify himself to the sheriff. Under these circumstances, opening and reading the letter was reasonable to determine if it was legal mail. The result would have been the same whether or not Mason was present. Sergeant Soule was not required to ignore the content of the letter.

No authority that has come to this court's attention suggests that Sergeant Soule's opening Mason's mislabeled mail in these circumstances violated any constitutional protection. Moreover, even if some protection had been infringed, nothing has been brought to the court's attention that suggests that the legal remedy would be suppression of the evidence.

Affirmed.