No. 84,458

STATE OF KANSAS, *Appellee*, v. LINDA K. EVANS, *Appellant*.

(17 P.3d 340)

Opinion filed January 26, 2001.

*Rick Kittel*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Charles R. Reimer*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J: Defendant Linda K. Evans appealed her conviction of premeditated first-degree murder, claiming (1) the trial court erred in failing to instruct the jury on voluntary manslaughter committed in the heat of passion, and (2) the evidence was insufficient to sustain her conviction of premeditated murder.

The victim, Elmer Rainbolt, who was 72 years of age and in failing health, lived in Sedgwick County, Kansas, with his nephew, Dennis Rich. Rich traveled frequently for his job. Elmer had a home oxygen machine to self-administer oxygen by a nasal cannula. Elmer had a long relationship with 38-year-old Linda Evans. In April, 1998, Linda began staying with Elmer in Rich's house.

In the mid-afternoon on March 23, 1999, to celebrate the start of Evans' new job the next day, Elmer and Evans went to the Red Garter Inn, a dance club in Wichita. Elmer ordered his usual two beers. Evans drank gin and tonic. As was Elmer's normal practice, he wanted to leave the club after two beers. Evans wanted to stay and have more drinks. After a brief argument, Elmer and Evans left the club. A short time later, Evans returned to the club and ordered a drink. The bartender refused to serve Evans because the club did not serve unescorted female patrons. Evans left the club and called her sister, Addie Clifford.

Evans told Clifford that Elmer was starting his "effing shit" again. Clifford understood Evans to mean that Elmer was bothering Evans to have sex. Clifford was concerned that if Evans continued to fight with Elmer, Evans would not go to her new job the next day. Clifford encouraged Evans to return home to Elmer. Evans stated that she was scared to call Elmer so she requested Clifford to call Elmer and ask him to pick her up at the club.

Clifford called Elmer. Elmer laughed at the suggestion that he had bothered Evans for sex and explained that he had worked from 6 a.m. to 3 p.m. Clifford asked Elmer to return to the club and pick up Evans. Clifford did not want to pick up Evans because Evans was drunk and she would not allow a drunken Evans in her home. A short time later, Clifford received a second call from Evans. Clifford informed Evans that Elmer was returning to the club to pick her up.

Elmer returned to the club and picked up Evans. A short while later, Elmer called Clifford and said that on the way home from the club, Evans had gotten out of the car and begun walking down the highway. Clifford persuaded Elmer to go back and get Evans. Clifford wanted Evans home and calmed down sufficient to start work the next day.

Elmer called Clifford at 5 p.m. and said that Evans was "acting up." Clifford could hear her sister in the background. Evans was angry because Elmer would not get her a bottle of gin. Clifford told Elmer not to tolerate Evans' anger—he should call the police.

Elmer called the Sedgwick County 911 service around 6 p.m. and reported that he had been stabbed in the back by Evans. He stated that Evans had left the house and had taken the knife with her.

When Sedgwick County Emergency Medical Services and Sheriff's Department officers arrived they found Elmer lying on the kitchen floor in a pool of blood. Elmer had stab wounds in his back. Elmer's nasal cannula was in place. Elmer was pronounced dead at the hospital.

While deputies were investigating the crime scene, Marvell Standifer and his brother James informed the officers that while riding by on horseback, they had observed a woman lying on the ground, hiding in the brush. Deputies searched the area and discovered Evans. Evans informed the officers that she had thrown the knife outside the residence. After a brief search, officers found a butcher knife with blood on the tip laying on the ground. Elmer's blood was on the knife and Evans' clothing.

On March 25, 1999, the State charged Evans with premeditated murder. On September 15, 1999, Evans was found guilty by a jury. Evans received a hard 25 life imprisonment sentence. This court's jurisdiction is pursuant to K.S.A. 22-3601(b)(1).

## VOLUNTARY MANSLAUGHTER INSTRUCTION

On appeal, Evans contends that the judge's failure to instruct on voluntary manslaughter committed in the heat of passion was clearly erroneous because the jury could have found that Elmer's sexual advances deprived her of self-control or the ability to reflect

on her act. The State argues that a "heat of passion" instruction was not required because there was no evidence that Evans acted with "intense or vehement emotional excitement" of a "degree as would cause an ordinary person to act on impulse without reflection." *State v. Bailey*, 256 Kan. 872, Syl. ¶ 6, 889 P.2d 738 (1995).

The jury was instructed on premeditated murder, second-degree murder, and voluntary manslaughter upon a sudden quarrel. Voluntary manslaughter is the intentional killing of a human being committed upon a sudden quarrel or in the heat of passion. K.S.A. 21-3403(a). The judge's voluntary manslaughter instruction allowed the jury to find Evans guilty of that crime if she killed Elmer "upon a sudden quarrel." The judge determined there was insufficient evidence to include "heat of passion" in the instruction. The defendant did not object.

In order that a court be required to instruct on voluntary manslaughter committed in the heat of passion, the evidence must show that the heat of passion alleged resulted from severe provocation sufficient to cause an ordinary person to lose control of his or her actions or reason. See *State v. Follin*, 263 Kan. 28, 34, 947 P.2d 8 (1997). The provocation must consist of more than mere words or gestures. *State v. Clark*, 261 Kan. 460, 467, 931 P.2d 664 (1997).

In a criminal action, a trial court is required to instruct the jury on the law applicable to the defendant's theories for which there is supporting evidence. *State v. Sims*, 265 Kan. 166, 168, 960 P.2d 1271 (1998). No party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds of his or her objection, unless the instruction or the failure to give the instruction is clearly erroneous. K.S.A. 22-3414(3). Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred. *State v. Henry*, 263 Kan. 118, 131, 947 P.2d 1020 (1997).

In *Follin*, there was no quarrel between the defendant and his victims. Follin was distraught because his wife was having an affair.

In response to the prospect of losing his family, Follin stabbed and killed his two infant daughters. Follin's expert witness testified that the potential loss of Follin's family created an anxiety or panic reaction which affected Follin's mental capacity. The trial court refused Follin's request for an instruction on voluntary manslaughter committed in the heat of passion.

On appeal, Follin argued that although the same situation might not provoke an ordinary person to kill, where there was substantial evidence of his mental disability, the test for provocation should have been his subjective state of mind. The *Follin* court disagreed and affirmed the objective standard for assessing provocation. *Follin*, 263 Kan. at 40.

In *Clark*, there was a sudden quarrel between Clark and the victim. Clark had spent an evening with his girlfriend and another couple. Throughout the evening, Clark repeatedly reacted in a physically violent manner, believing that his girlfriend was interested in other men or other men were interested in his girlfriend. The evening culminated with Clark killing his girlfriend and attempting to kill his friend who attempted to defend the girlfriend. The trial court refused to instruct on attempted voluntary manslaughter of Clark's friend. The jury convicted Clark of first-degree murder of the girlfriend and attempted first-degree murder of the friend.

On appeal, Clark contended that the evidence required an instruction on attempted voluntary manslaughter. The *Clark* court reviewed the evidence and found that although the friend physically confronted Clark, there was no evidence that the confrontation was sufficient to deprive an ordinary person of self-control. The *Clark* court found the defendant's acts against his friend were deliberate and previously expressed; therefore, the requested instruction was not required. *Clark*, 261 Kan. at 467-68.

Here, the evidence focused on the quarrel between Evans and Elmer as the precipitant for the killing. There is evidence that Elmer had bothered Evans for sex on the day of the killing. This evidence did not rise to provocation sufficient to provoke an ordinary person to kill. The instruction as given was correct.

## SUFFICIENCY OF EVIDENCE

Evans contends that there was no evidence of premeditation and that the physical evidence strongly suggests that the killing of Elmer was spontaneous. When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999).

Premeditation is a matter of thinking of killing the victim before doing so, but not necessarily a matter of long-range planning. *State v. Rice*, 261 Kan. 567, 587, 932 P.2d 981 (1997). The element of premeditation is not inferred from use of a deadly weapon alone, but if additional circumstances are shown, such as lack of provocation, the defendant's conduct before and after the killing, or the striking of a lethal blow after the deceased was rendered helpless, the evidence may be sufficient to support an inference of premeditation. *State v. Saleem*, 267 Kan. 100, Syl. ¶ 4, 977 P.2d 921 (1999).

To show sufficiency of the evidence, the State points to the number and nature of Elmer's wounds; the lack of provocation; Elmer's posture and vulnerability; Elmer's defensive wounds; and the absence of defensive wounds on Evans. In addition, there is evidence that Evans made no attempt to render or obtain aid for Elmer, Evans hid after the attack, and she disposed of the murder weapon.

Evans stabbed Elmer in the back three times. One wound, located high on the shoulder, had two tracks, indicating that the knife was pushed in, withdrawn, and pushed in again. One wound was inflicted lower on Elmer's back and showed a lateral laceration. The wounds were delivered with force significant enough to cause the knife to go through Elmer's bones. The evidence indicates that Elmer was in a sitting position when Evans obtained a knife from the butcher block and approached Elmer from behind to stab him repeatedly with significant force in the back. There is overwhelming evidence that Evans thought about killing Elmer before delivering the blows with the knife.

Affirmed.