No. 84,360

STATE OF KANSAS, *Appellee*, v. MELVIN W. HOLMES, *Appellant*.

(33 P.3d 856)

Opinion filed November 9, 2001.

*Craig H. Durham*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the briefs for appellant.

*Debra S. Peterson*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant Melvin W. Holmes was convicted of premeditated first-degree murder and criminal possession of a firearm. The trial judge sentenced defendant to a hard 40 sentence. Defendant appeals his convictions and sentences claiming (1) the prosecutor's comments during closing argument denied defendant his right to a fair trial; (2) the premeditation instruction was unconstitutionally vague; (3) the trial court failed to suppress defendant's statements to police officers; (4) evidence was insufficient to sustain the imposition of the hard 40 sentence; and (5) aggravating circumstances must be proved to the jury beyond a reasonable doubt. Because we are setting aside the jury verdict of guilty of premeditated first-degree murder, we will not discuss the remaining issues.

On March 7, 1999, at 5:19 a.m., police received a 911 call from Holmes, who calmly stated that he had shot his girlfriend during an argument. When law enforcement officers arrived at Holmes' house, they found Glenda Smith's body in the hallway and a gun laying on her shoulder. Smith had been shot in the chest. There was a semicircular cut, consistent with the shape of a hammer, on the top of her head. It was later determined that the hammer blow did not fracture Smith's skull or cause brain injury. The gunshot wound was a contact wound, indicating the gun was held next to Smith's skin when fired. Smith's fingers were stiff, and the blood in her mouth dry. Drug paraphernalia was found throughout the house. Holmes was arrested.

At the police station, Holmes was advised of his *Miranda* rights. After initialing the advice of rights form, Holmes stated that he and Smith had used heroin and cocaine and argued about drugs. While they were in bed, Holmes said, Smith began talking "shit." Smith was "tweaking," *i.e.*, paranoid because of drug use. At such times, Smith would obtain knives and a gun from the armoire.

Fearing what Smith would do, Holmes stated that he grabbed a hammer that was laying next to the bed and hit Smith in the head. The blow did not faze Smith. Smith jumped up in the bed screaming. Holmes noted that Smith had the gun in her hand. Holmes grabbed for the gun. A struggle ensued on the bed, in the room, and finally into the hallway outside the bedroom. During the struggle, the gun clicked several times but did not fire. Holmes did not know who was pulling the trigger because they both had hold of the gun. It was later determined that the ammunition was too long for the gun and that the revolver's cylinder would not always rotate correctly.

Holmes told the police that in the hallway he overpowered Smith, took control of the gun, and threw Smith to the floor and straddled her. He then placed the gun to Smith's chest. When Smith put her hands on the gun, Holmes threatened that he "could" or "would" kill Smith. During the struggle over the gun, Smith was shot in the chest. Shocked by what had happened, Holmes dropped the gun on Smith's chest, stepped over Smith's body, went to the bathroom, and finished using his stash of drugs.

Holmes stated to the officers that after Smith was shot, he should have called an ambulance to assist Smith, but since he was going to jail, "he figured, what the hell, he would go ahead and finish up the drugs." After finishing the drugs, Holmes called 911. The 911 call was received at 5:19 a.m.

Holmes was charged with premeditated first-degree murder and criminal possession of a firearm. Prior to trial, Holmes moved to suppress his statements to law enforcement officials. Holmes asserted that he had not been informed of his *Miranda* rights, and if informed of the rights he did not knowingly and intelligently waive those rights. At the suppression hearing, Holmes argued he did not knowingly and intelligently waive his *Miranda* rights. The judge found Holmes' statements were voluntarily and knowingly made.

Prior to trial, the State filed its notice of intent to request mandatory 40-year imprisonment. The notice identified two aggravating circumstances: (1) The crime was committed for the defendant's self or another for the purpose of receiving money or other thing of monetary value, and (2) the crime was committed in an especially heinous, atrocious, or cruel manner.

At trial, Holmes' defense was that the shooting was accidental. The time between the shooting and Holmes' 911 call was disputed at trial. Holmes testified that he called law enforcement 6 minutes after the shooting. Neighbors testified that they heard shots fired at around 3:30 a.m. or 4 a.m., *i.e.*, 60 to 90 minutes before Holmes' 5:19 a.m. 911 call. The jury convicted Holmes of first-degree premeditated murder and criminal possession of a firearm. The court found aggravating factors and imposed the hard 40 sentence. Holmes appeals. This court's jurisdiction is pursuant to K.S.A. 22-3601(b)(1).

## Prosecutor's Comments

Holmes had been arraigned on first-degree premeditated murder, K.S.A. 21-3401(a). After hearing the evidence, the trial court determined it was required to instruct the jury on first-degree (premeditated) murder and the lesser included offenses of second-

degree (intentional) murder, K.S.A. 2000 Supp. 21-3402(a), and voluntary (intentional) manslaughter, K.S.A. 21-3403.

At the jury instructions conference prior to closing arguments, the following discussion occurred as to the instruction on first-degree premeditated murder and the definition of premeditation:

"THE COURT: . . . .

"Now, an instruction based on case law has been offered by the State. Is this the language that you want—how you want it to read? [The prosecutor's proposed instruction is not in the record.]

"[PROSECUTOR]: Yes, that's how I want it to read. And it might be appropriate to put it with the definitions.

. . . .

"THE COURT: There is·no particular time period for premeditation.

"[PROSECUTOR]: Right. And I think that it's appropriate to go ahead and state that. And I have reviewed *State v. Moncla*, [262 Kan. 58, 936 P.2d 727 (1997)] . . . . And in that particular case the court actually gave a further definition of premeditation. It had said, premeditation·means to have thought over the matter beforehand. There is no particular time period for premeditation and it may arise in an instant. And the jury—or the judge—the Supreme Court said that it was a proper statement of the law, and that the use of it can arise in an instant. They didn't like that particular language so that's why I'm asking that that be eliminated. But it was not reversible error, even with that particular language that it could arise in an instant. But I do think that it is necessary in these circumstances to have a further definition of premeditation, that there is no time period required for premeditation. And so I'd ask the Court to allow that to go with the definition instruction.

"[DEFENSE ATTORNEY]: Um, your Honor, I'm not going to object to the language as [the prosecutor] has offered it for this instruction. I would ask the Court to place it under the premeditation definition that's currently in the instructions.

"THE COURT: Under what?

"[DEFENSE ATTORNEY]: Under the premeditation definition that's already in the instructions.

"THE COURT: You mean the elements instruction?

"[DEFENSE ATTORNEY]: No, Premeditation is defined in 56.04. At the top of the page it says, means to have thought over the matter beforehand. And if we could put in the language at that point that there's no particular time period, I would have no objection.

"THE COURT: So taking the State's [proposed] instruction on premeditation . . . .

"[PROSECUTOR]: Correct.

"[DEFENSE ATTORNEY]: Yes, your Honor.

"THE COURT: Okay. Boy, you know, and I've read that case before. I'm not satisfied with the language from that. I think they should have said something more along the line, there is no—to me, it can be interpreted two different ways, that the premeditation could have occurred at some time a week before, you know, the time period, rather than there's no particular length of time required for premeditation to take place. Do you understand?

"[PROSECUTOR]: Yeah. The language adding no particular length of time.

"THE COURT: Rather than no particular time period. There is no particular length of time —

"[PROSECUTOR]: That would be better.

"THE COURT: There is no particular length of time required for premeditation to occur.

"[PROSECUTOR]: I like that. I would ask to change it to that.

"[DEFENSE ATTORNEY]: Your Honor, if it's that technical, perhaps we should just not instruct on it. It would confuse the jury. I guess I'm going to go ahead and object for the record.

"THE COURT: Okay. What I'm going to do on the instructions is instruct them as follows: Premeditation means to have thought over the matter beforehand. There is no particular length of time required for premeditation to occur. My concerns are with the language that has been approved or has been found not to be appealable error. I think it still is — creates at least some confusion that could occur.

"[DEFENSE ATTORNEY]: Your Honor, —

"THE COURT: And I think that my language addresses the issue more specifically.

"[DEFENSE ATTORNEY]: I'm afraid that no particular length of time could imply to the jury that no time is necessary to show deliberation.

"[PROSECUTOR]: Well, it can happen in an instant, you know, so that would not be misleading the jury as far as the law in the State of Kansas.

"[DEFENSE ATTORNEY]: If no time is given to make a decision in that, then it's a snap judgment; it's not—it's not premeditation.

"THE COURT: No particular length of time for premeditation to occur. There is no identified length of time for premeditation to occur. If we were to use identified, as that—that may take away from a particular focus on instantaneous action. Simply, it tells them it's for them to determine, that there is no identified length of time required for premeditation to occur. No, I think I want to take away—depart from the already approved length as little as possible. What I'm going to do is include the instruction as follows: There is no particular length of time for premeditation to occur. The language, There is no particular time period for premeditation, I think my language is clear. If there's—I suppose the Supreme Court will tell me otherwise if it's appealed. But I think it's clear this way. And I think that covers all the instructions then."

After the presentation of evidence was completed, the judge instructed the jury regarding the law. Instruction No. 1 provided:

"It is my duty to instruct you in the law that applies to this case, and it is your duty to consider and follow all the instructions. You must decide the case by applying these instructions to the facts as you find them."

Instruction No. 4 stated: "*Statements*, arguments, and remarks of counsel are intended to help you in understanding the evidence and *in applying the law*, but they are not evidence. If any statements are made that are not supported by evidence, they should be disregarded." (Emphasis added.)

Instruction No. 13 set out the elements of first-degree murder:

"The defendant is charged in Count 1 with the crime of murder in the first degree. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:
1. That the defendant *intentionally* killed Glenda L. Smith;
2. That such killing was done with premeditation; and
3. That this act occurred on or about the 7th day of March, 1999, in Sedgwick County, Kansas."

## Instruction No. 15 provided as follows:

"If you do not agree that the defendant is guilty of murder in the first degree, you should then consider the lesser included offense of murder in the second degree, intentional.

"To establish this charge, each of the following claims must be proved:
1. That the defendant *intentionally* killed Glenda L. Smith; and
2. That this act occurred on or about the 7th day of March, 1999, in Sedgwick County, Kansas."

## Instruction No. 17 provided:

"In considering whether the defendant is guilty of [intentional] murder in the second degree, you should also consider the lesser offense of voluntary [intentional] manslaughter. If there is a reasonable doubt as to which of these two offenses the defendant is guilty, the defendant may be guilty of voluntary manslaughter only.

"To establish this charge, each of the following claims must be proved:
1. That the defendant *intentionally* killed Glenda L. Smith;
2. That it was done upon a sudden quarrel, in the heat of passion, or upon an unreasonable but honest belief that circumstances existed that justified deadly force in the defense of a person; and
3. That this act occurred on or about the 7th day of March, 1999, in Sedgwick County, Kansas." (Emphasis added.)

Instruction No. 19 defined certain terms used in the instructions and provided, in part, that "[p]remeditation means to have thought over the matter beforehand. There is no particular length of time required for premeditation to occur," "[w]illfully means conduct that is purposeful and intentional and not accidental," and "[i]ntentionally means conduct that is purposeful and willful and not accidental. Intentional includes the terms 'knowing,' 'willful,' 'purposeful' and 'on purpose.'"

Holmes' claim that he did not receive a fair trial concerns the jury instructions, the prosecutor's statement of the law to the trial judge, and the prosecutor's contrary statement of law to the jury. After the jury was instructed by the judge as to the law, the prosecutor stated in closing argument:

"So, ladies and gentlemen, if you look at all those facts, you see that, in fact, he did have the premeditation to kill Glenda Smith. But remember this, remember that definition that says that premeditation, there isn't a particular length of time for premeditation. *Ladies and gentlemen, premeditation can occur in an instant. That's the law in the State of Kansas.* And, ladies and gentlemen, that's what he did." (Emphasis added.)

In rebuttal, the prosecutor stated:

"And premeditation can take a second. It was an intentional killing. You put a gun to somebody you know and you pull the trigger, you know it could kill them. And he did that, but it was premeditated. It can happen in a second.

"When I bent down to pick up my pen, that was premeditated. I thought about picking up my pen. We know he thought about killing Glenda because he told her, You know I'll kill you. That's what he told her. He was thinking about it as he pulled that trigger and left her laying [sic] dead on the floor, and then let her stay there for a couple of hours."

There was no objection to the prosecutor's remarks regarding the time in which premeditation occurs. On appeal, Holmes contends that the prosecutor's remarks that premeditation can occur in an instant or in a second is *plain error* and requires a reversal of Holmes' first-degree premeditated murder conviction. In our discussion we will first note the difference between the federal "plain error" rule and the Kansas harmless error statute.

We note that the Kansas Legislature enacted the harmless error rule. K.S.A. 60-261 states:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

Rule 52 of the Federal Rules of Criminal Procedure is similar to K.S.A. 60-261 and provides:

"(a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

"(b) Plain error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

The Kansas harmless error statute encompasses the federal harmless error and plain error rules. Normally, under the Kansas harmless error rule, reversible error cannot be predicated upon misconduct by the prosecutor during closing argument if a contemporaneous objection is not made. However, under K.S.A. 60-261, if the prosecutor's statements rise to the level of violating a defendant's right to a fair trial or deny a defendant his or her Fourteenth Amendment right to due process, reversible error occurs despite the lack of a contemporaneous objection, because such act is inconsistent with substantial justice. *State v. Lumley*, 266 Kan. 939, 964-65, 976 P.2d 486 (1999).

K.S.A. 60-261 places upon the trial court a duty to protect a defendant's right to a fair trial. The trial court is required to prevent prosecutorial misconduct from occurring regardless of whether a timely objection has been lodged by the defendant. *State v. Gray*, 25 Kan. App. 2d 83, 88, 958 P.2d 37 (1998). To buttress his claim that he is entitled to a new trial, Holmes argues that the prosecutor purposefully misstated to the jury the law of Kansas on premeditation and that this misstatement deprived him of his right to a fair trial. For support, Holmes relies on *Moncla*, 262 Kan. 58.

In *Moncla*, 262 Kan. at 72, we stated that the district court's instruction to the jury that "premeditation means to have thought over the matter beforehand, and that there is no particular time period for premeditation" was a correct statement of law. We re-

jected the trial judge's inclusion of the phrase that premeditation "may arise in an instant" in the jury instruction defining premeditation. The unanimous *Moncla* court concluded that the addition of the phrase "it may arise in an instant" diminished the definition of premeditation. 262 Kan. at 72.

Because the issue on appeal is framed as prosecutorial misconduct and there was no objection to the alleged misconduct at trial, we must first determine if the prosecutor's misstatement of the Kansas law violated Holmes' right to a fair trial and his Fourteenth Amendment right to due process. To analyze whether Holmes' right to a fair trial was jeopardized, it is necessary to consider the prosecutor's remarks to the judge regarding the judge's instructions of the law to the jury and the prosecutor's contrary statement of the law to the jury.

Due to the fact that each of the three jury instructions as to the degree of homicide required proof of an intentional act, the issue for the jury to first determine was whether Holmes had premeditated the killing of Smith. We note that in a prosecution for premeditated murder, the law does not presume the existence of premeditation or deliberation from any state of circumstances. However, it is not necessary that a premeditated intent to kill be established directly. Premeditation and deliberation may be inferred from the established circumstances, provided the inference is reasonable. If an inference is reasonable, the jury has the right to make the inference. *State v. Buie*, 223 Kan. 594, 597, 575 P.2d 555 (1978).

Holmes contends the prosecutor's statement to the jury that premeditation can occur in an instant was a misstatement of law which blurred the distinction between first-degree premeditated murder and the lesser included offenses and denied him due process of law.

In *State v. Jamison*, 269 Kan. 564, 573, 7 P.3d 1204 (2000), the court observed that the concept of "premeditation," as defined in PIK Crim. 3d 56.04(b), is more than the *instantaneous, intentional act of taking another's life*. It concluded that to have thought the matter over beforehand means to form a design or intent to kill before the act. 269 Kan. at 573. Here, the prosecutor, after inform-

ing the judge as to the law, deliberately misstated the law to the jury, and the trial court's failure to act to correct the misstatement deprived Holmes of his right to a fair trial.

Reversed and remanded for a new trial.

ALLEGRUCCI, J., concurs in the result.