No. 85,976

STATE OF KANSAS, *Appellee*, v. TOD ALAN PABST, *Appellant*.

(44 P.3d 1230)

cert denied ____ U.S. ____

Opinion filed April 26, 2002.

*Penny R. Moylan*, of Topeka, argued the cause and was on the brief for appellant.

*Jared S. Maag*, assistant attorney general, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: We earlier reversed and remanded defendant Tod Alan Pabst's conviction for first-degree premeditated murder of his fiancee. The prosecutor's remarks during closing arguments were so prejudicial that a new trial was required. See *State v. Pabst*, 268 Kan. 501, 502, 996 P.2d 321 (2000) (*Pabst I*). On retrial, Pabst was again convicted of first-degree premeditated murder. The district court imposed a sentence of life imprisonment with the possibility of parole in 25 years. See K.S.A. 2001 Supp. 22-3717. Pabst appeals his conviction and sentence.

Our jurisdiction is under K.S.A. 22-3601(b)(1) (an appeal of a conviction for an off-grid crime receives review by this court).

The issues are whether: (1) the district court erred by failing to provide an additional instruction on the definition of premeditation, (2) the prosecutor's closing argument requires reversal, (3)

the first-degree premeditated murder conviction was supported by sufficient evidence, (4) the district court erred in admitting Pabst's testimony from his first trial into evidence, and (5) the district court erred by refusing to provide an additional instruction on the definition of voluntary intoxication.

We find no reversible error and affirm.

## DISCUSSION

The facts are set out in *Pabst I*, 268 Kan. at 503. The initial trial was in Colby, Kansas, Thomas County. On retrial, the district court granted Pabst's motion for a change of venue. The second trial, from which Pabst now appeals, was held in Hays, Kansas, Ellis County. Pabst did not take the stand at the second trial.

### Instruction on Premeditation

Pabst claims the district court erred by failing to provide an additional instruction on the definition of premeditation. The district court instructed the jury that "[p]remeditation means to have thought over the matter beforehand," in conformity with Pattern Instructions for Kansas (PIK) Crim. 3d 56.04(b) (premeditation). During the instructions conference, Pabst's counsel cited the concurring opinion in *State v. Saleem*, 267 Kan. 100, 977 P.2d 921 (1999), and requested the following additional language: "Premeditation means something more than the instantaneous intentional act of taking another's life. To have thought the matter over beforehand means to form a design or intent to kill before the act." The district court denied counsel's request, citing *State v. Jamison*, 269 Kan. 564, 7 P.3d 1204 (2000). *Saleem* held: "Premeditation as an element of first-degree murder means to have thought over the matter beforehand." 267 Kan. 100, Syl. ¶ 2. Our standard of review is whether the instruction given properly and fairly stated the law as applied to the facts of the case and whether the instruction reasonably could have misled the jury. See *State v. Carr*, 265 Kan. 608, 617, 963 P.2d 421 (1998).

The State argues that there was no "objection" by Pabst to the failure to give his requested instruction. The State concludes that the clearly erroneous standard of review should be applied. This

conclusion lacks merit. We have said: "It is well established that this court reviews a trial court's failure to give an instruction by a clearly erroneous standard where the party *neither requested the instruction nor objected to its omission.*" (Emphasis added.) *State v. Sperry*, 267 Kan. 287, 294, 978 P.2d 933 (1999). Here, Pabst requested the additional instruction.

In *Jamison*, we expressly approved the PIK Crim. 3d 56.04(b) definition of "premeditation" given here. We recognized that in *Saleem*, the concurring opinion expressed disagreement with PIK Crim. 3d 56.04(b) and our statement that the definition of premeditation is "to have thought over the matter beforehand." 269 Kan. at 573. We found that the PIK definition "adequately conveys the concept that 'premeditation' means something more than the instantaneous, intentional act of taking another's life." 269 Kan. at 573. The district court did not err in refusing to provide the requested additional instruction regarding premeditation.

### Prosecutor's Closing Argument

Pabst argues that the prosecutor committed misconduct during closing argument, requiring a reversal of his conviction. This contention lacks merit. First, Pabst asserts that the prosecutor made statements that did not accurately define premeditation. Pabst's counsel objected to the statements and was overruled.

The analysis of the effect of a prosecutor's alleged improper remarks in closing argument is a two-step process. First, we must decide whether the remarks were outside the considerable latitude the prosecutor is allowed in discussing the evidence. Second, we must decide whether the remarks are so gross and flagrant as to prejudice the jury against the accused and deny a fair trial. *State v. Campbell*, 268 Kan. 529, 539, 997 P.2d 726, *cert. denied* 531 U.S. 832 (2000) (citing *State v. Lumley*, 266 Kan. 939, Syl. ¶ 12, 976 P.2d 486 [1999] ).

Here, the prosecutor said:

"Now ladies and gentlemen, as we all know, science has not yet evolved to the point where we can read minds. We don't have a machine where we can plug it in and say we know what was in a person's mind. So what we have to do is, as prosecutors and jurors, is look at the surrounding circumstances of the crime itself,

and the law allows for you to look at that, to look at what surrounds the crime to see if evidence of premeditation exists.

"Now, before we get to those factors, *there's no amount of time that's required.*

. . . .

"You notice that there's no time element in premeditation. There's no interval that's required. *There's no plan.* You don't have to think about it for weeks.

. . . .

"You don't have to think about it for weeks, days, hours, 50 minutes, ten minutes. It means to have thought over the matter beforehand. *It's the conscious act of a person.* The only way that such matter can be proved is by looking at the circumstances." (Emphasis added.)

Pabst asserts that the prosecutor misstated the law when he said there was "no amount of time that's required." According to Pabst, *State v. Kingsley*, 252 Kan. 761, 851 P.2d 370 (1993), and *State v. Patterson*, 243 Kan. 262, 755 P.2d 551 (1988), are distinguishable from this case. In both *Kingsley* and *Patterson*, we found no error where the district court instructed the jury that "[t]here is no specific time element required to establish premeditation." *Kingsley*, 252 Kan. at 771-72; *Patterson*, 243 Kan. at 268. In *Kingsley*, we noted that such an instruction correctly stated the law. 252 Kan. at 772.

Pabst argues that the prosecutor's use here of "no amount of time required" is different from "no specific time element required." He contends that the statement "no amount of time required" means that *no* time is required and, thus, we should reverse Pabst's conviction. His reasoning is not persuasive. According to the State, the prosecutor was explaining that no specified amount of time was required for premeditation. We find the State's explanation a dubious distinction. However, the law clearly does not require a particular time period for premeditation. *State v. Moncla*, 262 Kan. 58, 72, 936 P.2d 727 (1997). We find no reversible error here.

Prosecutors are admonished to read *State v. Holmes*, 272 Kan. 491, 33 P.3d 856 (2001), where we found the prosecutor's deliberate misstatement of the law regarding premeditation was reversible error. In closing argument, the prosecutor in *Holmes* said that "premeditation can occur in an instant. That's the law in the State of Kansas." 272 Kan. at 497. This was a deliberate misstatement,

as evidenced by the prosecutor's statements to the district judge during the jury instructions·conference. 272 Kan. at 497.

A discussion of PIK Crim. 3d 56.04(b) in closing argument should avoid any temptation to use a synonym to convey the suggestion of "an instant" without using the actual phrase.

Next, Pabst contends that the prosecutor committed misconduct when he said that premeditation is the "conscious act of a person" and that "[t]here's no plan." He argues that describing premeditation as the "conscious act of a person" does away with the need for the element of premeditation and implies that only "intent" is required. He also asserts that by saying "[t]here's no plan," the prosecutor contradicted *State v. Thompkins*, 263 Kan. 602, 609, 952 P.2d 1332 (1998), where we said: "Premeditation means that there was a design or intent before the act; that is, the accused planned, contrived, and schemed before killing the victim."

The State argues that in context, the prosecutor's statements are not erroneous. It notes that in *State v. Scott*, 271 Kan. 103, 108, 21 P.3d 516, *cert denied* 151 L. Ed. 2d 550 (2001), we said: "Premeditation is the time of reflection or deliberation. Premeditation does not necessarily mean that an act is planned, contrived, or schemed beforehand." In *Scott*, we found that the defendant had his hand on the victim's neck until she became unconscious. We concluded that Scott's continued application of pressure over a period of time was sufficient for a jury to find that victim's death was premeditated. 271 Kan. at 108.

In *State v. Doyle*, 272 Kan. 1157, 1163, 38 P.3d 650 (2002), we discussed the prosecutor's statement that "[s]omething can be premeditated as soon as it happens." This was a misstatement of the law. See 272 Kan. at 1165. We noted that in *Moncla*, we disapproved a jury instruction that included a phrase that premeditation "may arise in an instant." However, the error was not reversible in *Moncla* because the record contained abundant evidence of premeditation and deliberation, and the jury was not misled by the instruction. *Moncla*, 262 Kan. at 73.

Here, the prosecutor's statements that "[i]t's the conscious act of a person" and "[t]here's no plan" are questionable. Pabst argues that the prosecutor's misstatements clearly prejudiced the jury in

that the jury requested a reading of the prosecutor's closing argument on premeditation. However, the record shows that the district court referred the jury to the instruction regarding premeditation and the instruction regarding statements of counsel. The jury was instructed in conformity with PIK Crim. 3d 56.04(b). The jury was also instructed that the statements and arguments of counsel are not evidence. We see no indication from the record that the prosecutor purposefully misstated the law. Finally, as noted later in our opinion, the record contains evidence of premeditation. Any error here by the prosecution regarding premeditation was harmless.

Pabst also contends that the prosecutor committed misconduct by stating facts not in evidence. We disagree. Generally, reversible error cannot be predicated upon a complaint of prosecutorial misconduct during closing arguments where no contemporaneous objection is lodged. *State v. Finley*, 268 Kan. 557, 571, 998 P.2d 95 (2000). We have no objection here. The prosecutor's statements did not rise to the level of violating either Pabst's right to a fair trial or the Fourteenth Amendment right to due process. See *State v. Diggs*, 272 Kan. 349, 362-63, 34 P.3d 63 (2001).

Pabst complains that twice the prosecutor said that Pabst "ambushed" Harkins. While the prosecution is given wide latitude in the language and presentation of closing arguments in a criminal trial, counsel is required to confine remarks to matters in evidence. *State v. Hooker*, 271 Kan. 52, 67, 21 P.3d 964 (2001).

Pabst notes that an issue for the jury to decide was whether the shooting was intentional or accidental. He argues that the prosecutor's comments were prejudicial because they went directly to the issue. As the State points out, the word "ambush" connotes a sudden attack. Such an intentional act is consistent with the evidence and the State's theory of premeditated first-degree murder. The prosecutor's comments were not improper. We close this portion of our opinion with a caveat. Prosecutors, in discussing PIK Crim. 3d 56.04(b) with the jury during closing argument, are to follow the teaching of *Pabst I*:

"A prosecutor is a servant of the law and a representative of the people. The prosecutor represents a sovereignty whose obligation to govern impartially is as

compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." 268 Kan. 501, Syl. ¶ 6.

## Sufficiency of the Evidence

Next, Pabst argues that his conviction was not supported by sufficient evidence of premeditation. Again, we disagree. The question is whether, after a review of all the evidence, viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found Pabst guilty beyond a reasonable doubt. See *State v. Evans*, 270 Kan. 585, 590, 17 P.3d 340 (2001).

Pabst contends that there was no direct evidence of premeditation. His argument was raised and rejected in *Pabst I*. 268 Kan. at 512. Here, he contends that the State only presented evidence of intent, not premeditation. Unless a person communicates his or her reasons for taking another's life, premeditation must be proved by circumstantial evidence. Premeditation may be inferred from various circumstances, including: (1) the nature of the weapon used; (2) the lack of provocation; (3) the defendant's conduct before and after the killing; (4) threats and declarations of the defendant before and during the occurrence; or (5) the dealing of lethal blows after the deceased was felled and rendered helpless. *State v. White*, 263 Kan. 283, 294, 950 P.2d 1316 (1997). Premeditation cannot be inferred from the use of a deadly weapon alone, but it may be inferred where other circumstances also exist. *Doyle*, 272 Kan. at 1162.

Pabst notes that the State presented evidence that it was anatomically impossible for Harkins to have had her hands on the gun when she was shot. The State also presented evidence that the gun was at least 1 foot away from Harkins when she was shot and that she was seated during the shooting. Pabst contends that this evidence merely goes toward the element of intent. We disagree.

Pabst also argues that there was no evidence of a plan or scheme to kill Harkins because he had lunched with her earlier that day and "was in a great mood when he got home." He seems to ignore the fact that premeditation does not require a specific time frame.

See *Jamison*, 269 Kan. at 572-73. Although this record on appeal did not include photographs of the crime scene, testimony suggested that Harkins was found sitting on the couch with her legs crossed. There were no visible signs of a struggle. Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence for a rational factfinder to have found Pabst guilty of premeditated first-degree murder.

### Pabst's Prior Trial Testimony

Pabst did not testify at his second trial. He argues that the district court erred in admitting his *Pabst I* testimony. We disagree. The admission or exclusion of evidence lies within the sound discretion of the district court. On appellate review, we examine whether the district court abused its discretion. *State v. Hooker*, 271 Kan. at 63. We have held that the voluntary testimony of a defendant given at a prior trial is admissible at retrial. There is an exception to this rule when the prior testimony was compelled by the introduction of illegally obtained evidence. *State v. Willcox*, 240 Kan. 310, 313-14, 729 P.2d 451 (1986). The exception does not apply here.

Pabst contends that the testimony from his first trial was not voluntarily given. He reasons that he "would not have needed to testify" had the district court admitted his former wife's testimony. His contention is not persuasive.

First, he did not argue in the district court that his prior trial testimony was involuntary or that his Fifth Amendment right against self-incrimination was violated. Where constitutional grounds are raised for the first time on appeal, they are not properly before us. *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999). The exceptions to our general rule recognized in *State v. Conley*, 270 Kan. 18, 30-31, 11 P.3d 1147 (2000), do not apply here.

Second, this case does not fall within the exception to the rule for admitting prior testimony in a retrial. There was no illegally obtained evidence introduced by the State in the first trial. See, *e.g., Harrison v. United States*, 392 U.S. 219, 222, 20 L. Ed. 2d 1047, 88 S. Ct. 2008 (1968) (establishing an exception where the

defendant's testimony is compelled as result of introduction of illegally obtained evidence).

Third, in this retrial, Pabst withdrew his motion to allow the testimony of his former wife. The State pointed out to the district court after interviewing the former wife that she "will not testify to what the defense first proffered in this trial the first time around . . . . So the proffer is different, or the actual testimony is going to be different from the proffer." Dauge did not testify at the second trial. We find no abuse of discretion in allowing Pabst's prior testimony to be admitted into evidence.

### Voluntary Intoxication

The district court gave the PIK Crim. 3d 54.12-A (1996 Supp.) voluntary intoxication instruction to the jury:

"Voluntary intoxication may be a defense to the charge of premeditated first-degree murder, where the evidence indicates that such intoxication impaired a Defendant's mental faculties to the extent that he was incapable of forming the necessary intent to commit intentional murder with premeditation."

Pabst argues that the district court erred by refusing to give an additional instruction on the definition of voluntary intoxication. Pabst requested such an instruction. Thus, our standard of review is whether the instruction given without the additional requested language properly and fairly stated the law as applied to the facts of the case and whether the instruction given reasonably could have misled the jury. See *State v. Carr*, 265 Kan. 608, 617, 963 P.2d 421 (1998).

Pabst requested the following instruction with supplemental language:

"Voluntary intoxication may be a defense to the charge of premeditated first-degree murder, where the evidence indicates such intoxication impaired a defendant's mental faculties to the extent that he was incapable of forming the necessary intent *or other state of mind* to commit intentional murder with premeditation." (Emphasis added.)

PIK Crim. 3d 54.12-A the instruction not given here, involves voluntary intoxication and "state of mind." Pabst argues that Kansas law requires the additional "state of mind" language to be given to the jury. He notes that K.S.A. 21-3208(2) provides:

"An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent *or other state of mind* is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent *or state of mind.*" (Emphasis added.)

The Comment to PIK Crim 3d 54.12-A says: "Where a defendant relies on evidence of voluntary intoxication to show lack of a required state of mind, the instruction on voluntary intoxication should include reference to the state of mind."

Pabst advances *State v. Ludlow*, 256 Kan. 139, 883 P.2d 1144 (1994), to lend credence to his argument. In *Ludlow*, the issue involved PIK Crim. 3d 54.12-A and the instruction's omission of "or other state of mind" in light of K.S.A. 21-3208(2). Ludlow complained that premeditation was an "other state of mind." See 256 Kan. at 144-45. We agreed that the PIK instruction does not fully reflect the statutory provision. 256 Kan. at 145. We also agreed that premeditation is a "state of mind." 256 Kan. at 147. We held that the use of PIK Crim. 3d 54.12-A absent the phrase "or other state of mind" was error where the defendant was charged with premeditated murder. 256 Kan. 139, Syl. ¶ 4. However, we found no reversible error in that case. 256 Kan. at 148.

The State argues that *Ludlow* is distinguishable because in *Ludlow*, the jury instruction did not include the word "premeditation." See 256 Kan. at 143. We agree. Here, the jury was told that it could determine whether Pabst was "incapable of forming the necessary intent to commit intentional murder *with premeditation.*" (Emphasis added.)

We conclude that the instruction could not have reasonably misled the jury.

ALLEGRUCCI, J. concurring: I concur with the result reached by the majority but continue to disagree with the majority's approval of the instruction given on premeditation. I do so based on the reasoning expressed in my concurring opinion in *State v. Saleem*, 267 Kan. 100, 977 P.2d 921 (1999).

LOCKETT, J., joins in the foregoing concurring opinion.

Affirmed.