MODIFIED OPINION
No. 101,595

WILL A. WIMBLEY, *Appellant*, v. STATE OF KANSAS, *Appellee*.
(275 P.3d 35)

Review of the judgment of the Court of Appeals in an unpublished opinion filed February 12, 2010. Original opinion filed August 12, 2011; modified opinion filed November 23, 2011.

*Roger L. Falk*, of Law Office of Roger L. Falk, P.A., of Wichita, argued the cause, and *Will A. Wimbley*, appellant, was on the brief pro se.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

JOHNSON, J.: The State of Kansas seeks review of the Court of Appeals' decision which reversed the district court's summary denial of Will A. Wimbley's second K.S.A. 60-1507 motion. In addition to reversing the summary denial, the Court of Appeals reversed Wimbley's underlying convictions for first-degree murder and criminal possession of a firearm and remanded the case to the district court for a new trial with directions to conduct a pretrial hearing on the questions surrounding DNA evidence on the murder weapon. Finding the district court's rulings to be appropriate, we reverse the Court of Appeals.

## FACTUAL AND PROCEDURAL OVERVIEW

On February 10, 1999, Tina Cooper, a/k/a Leola Christina Haskins, Wimbley's ex-girlfriend, was found shot to death. She had

been shot seven times from very close range, as indicated by the presence of stippling and soot in the gunshot wounds. Wimbley was charged and tried for the crime. He defended on the basis that he had not seen or had any contact with the victim on the day of the crime. However, the jury convicted Wimbley of premeditated first-degree murder and criminal possession of a firearm.

Wimbley pursued a direct appeal with appointed counsel, albeit Wimbley was permitted to submit pro se supplemental briefs. *State v. Wimbley*, 271 Kan. 843, 26 P.3d 657 (2001) (*Wimbley I*). One of the issues raised on direct appeal was whether the prosecutor had committed misconduct during closing argument. Wimbley's specific claim was that the prosecutor had improperly commented on Wimbley's post-*Miranda* silence during closing, which claim was rejected. 271 Kan. at 854-55.

Wimbley also challenged the sufficiency of the evidence to support premeditation. He argued that the Supreme Court's definition of premeditation had blurred the line between first- and second-degree murder and that the prosecutor's closing argument had exacerbated the confusion. 271 Kan. at 849. Specifically, Wimbley complained of the following statement:

" 'Premeditation requires no specific time period. That's what the law is. It doesn't require any. It doesn't say well, you have to think about it for 30 seconds, or five, or five hours or anything else. Premeditation can occur in an instant. It can be a thought. Just like that (indicating). I can decide to kill anybody in this room and that would be premeditation. That's what the law is. And you swore—you all swore that you would follow the law, and the law says premeditation can happen just like that.' " 271 Kan. at 849-50.

*Wimbley I* pointed out that Wimbley's argument was identical to the one made by the defendant in *State v. Jamison*, 269 Kan. 564, 7 P.3d 1204 (2000). As in *Jamison*, *Wimbley I* found that the trial court's jury instruction on premeditation had been a correct statement of Kansas law and "that there was 'a very real distinction between the argument of a prosecutor and the instruction of a trial court.' " 271 Kan. at 850 (quoting *Jamison*, 269 Kan. at 573). *Wimbley I* affirmed the convictions.

In February 2002, some 6 months following the decision in *Wimbley I*, Wimbley filed his first K.S.A. 60-1507 motion. He supplemented his motion in July 2002. The district court appointed

counsel to represent Wimbley, conducted a preliminary hearing, and ultimately denied the motion without an evidentiary hearing. Wimbley appealed, raising a number of issues, including ineffective assistance of his trial counsel. *Wimbley v. State*, No. 90,025, 2004 WL 1191449, at *3 (Kan. App. 2004) (unpublished opinion) (*Wimbley II*). Specifically, Wimbley complained that his trial counsel had failed to adequately investigate, that trial counsel had improperly conceded in opening statement that Wimbley's DNA was on the murder weapon, and that trial counsel had failed to object to the prosecutor's misconduct during closing argument.

The *Wimbley II* panel affirmed the district court's denial of the 1507 motion. With respect to the prosecutorial misconduct issue, the Court of Appeals found that Wimbley had not raised the issue in his 1507 motion and noted that the issue of prosecutorial misconduct had been raised and decided in the direct appeal. *Wimbley II*, 2004 WL 1191449, at *9.

Four years later, in July 2008, Wimbley filed a second 1507 motion, again claiming ineffective assistance of his trial counsel for failing to object to prosecutorial misconduct during closing argument. This time, Wimbley's complaint singled out the prosecutor's statement that premeditation can occur in an instant. The motion also faulted Wimbley's direct appeal counsel for failing to claim prosecutorial misconduct for the closing argument misstatement of the law on premeditation, instead of using the prosecutor's misstatement of law to bolster an insufficiency of the evidence issue. Wimbley argued that the district court should address the merits of his claim because of an intervening change in the law effected by the Supreme Court's decision in *State v. Holmes*, 272 Kan. 491, 33 P.3d 856 (2001), which was filed November 9, 2001, approximately 4 months after *Wimbley I*. The second 1507 motion also requested DNA retesting on the murder weapon.

With respect to the prosecutorial misconduct question, the district court found Wimbley's second motion to be successive and untimely. It denied the motion without reaching the merits. In denying Wimbley's request for DNA retesting, the district court noted that DNA evidence on the firearm had not been used to convict Wimbley because the State had not presented such evidence at trial, and that Wimbley's own expert had informed the jury at trial that all of the

State's DNA evidence was unreliable because of cross-contamination between different items of evidence.

Wimbley appealed and filed a pro se brief. The issues identified in that brief claimed: (1) appellate counsel in the direct appeal was ineffective for failing to frame the issue of the misstated law on premeditation as prosecutorial misconduct, instead of an attack on the sufficiency of the evidence; (2) trial counsel was ineffective for failing to object to the prosecutor's misconduct during closing argument, including the prosecutor's misstatement of the law on premeditation; (3) appellate counsel in the appeal of the first 1507 motion was ineffective for failing to have the case remanded to the district court for rulings on the prosecutorial misconduct issues; (4) the district court erred in allowing prior crimes evidence without a limiting instruction; (5) the district court should have ordered that the DNA found on the murder weapon be retested; and (6) newly discovered evidence warranted a new trial. The State's brief relied solely on the argument that Wimbley's second 1507 motion was successive and that he had not established exceptional circumstances to warrant the consideration of a successive motion.

The Court of Appeals reversed the district court's ruling that Wimbley's second 1507 motion was procedurally barred. *Wimbley v. State*, No. 101,595, 2010 WL 597008 (Kan. App. 2010) (unpublished opinion) (*Wimbley III*), *rev. granted* 290 Kan. 1105 (2010). The panel opined that the Supreme Court's decision in *Holmes*, 272 Kan. 491, represented a "clear change in the law" from that applied some 4 months earlier in Wimbley's direct appeal. *Wimbley III*, 2010 WL 597008, at *6. The panel then determined that the failure of Wimbley's first 60-1507 counsel and appellate counsel to "call to any court's attention the clear change in the law represented by the distinction between the Supreme Court's opinion in Wimbley's direct appeal and its opinion in *Holmes*" provided the exceptional circumstances to permit consideration of the successive 1507 motion and triggered the manifest injustice exception to the time limitation of K.S.A. 60-1507(f). *Wimbley III*, 2010 WL 597008, at *6.

However, *Wimbley III* did not remand to the district court for a consideration of the merits of Wimbley's second 1507 motion. Instead, the panel determined that Wimbley was entitled to relief

as a matter of law, resulting in the reversal of the convictions and a remand for a new trial. *Wimbley III*, 2010 WL 597008, at *6.

In addition, *Wimbley III* speculated that the DNA on the murder weapon might be exculpatory, especially given the fact that the State did not offer such evidence at trial. Therefore, the panel directed the district court to conduct a comprehensive hearing on the questions surrounding DNA evidence on the firearm such as whether the firearm was in the State's possession and whether it had been previously tested and compared to Wimbley's most recent DNA sample. *Wimbley III*, 2010 WL 597008, at *9.

In seeking our review, the State argues that the Court of Appeals erred on multiple levels. On one level, the State contends that the only issue preserved for appellate review was whether Wimbley's second 1507 motion was procedurally barred as being successive and untimely, which was the ruling of the district court. Accordingly, the State asserts that the panel should not have considered the effectiveness of either trial or appellate counsel on the first 1507 motion because those issues had not been decided below. Moreover, by deciding issues not litigated in the district court, the Court of Appeals denied the State's opportunity to be heard on those issues.

With respect to the procedural rulings which were properly before the Court of Appeals, the State contends that *Holmes* could not be the basis for a finding of exceptional circumstances because it was neither a *change* in the law nor an *intervening* event. Further, the State suggests that the holding in *Holmes* did not establish a structural error which automatically mandates a new trial. Therefore, the State contends that an appellate finding of exceptional circumstances should result in a remand to the district court to consider the merits of the successive 1507 motion.

INTERVENING CHANGE IN THE LAW

At the core of the Court of Appeals' decision is its characterization of *Holmes* as an intervening change in the law. Accordingly, before proceeding further, we pause to analyze and clarify the holding in *Holmes*.

## A. Standard of Review

Our interpretation of the scope of this court's prior decisions is necessarily a question of law. Legal questions are subject to unlimited review. Cf. *Prugue v. Monley*, 29 Kan. App. 2d 635, 637, 28 P.3d 1046 (2001) (whether a legal duty exists is a question of law subject to unlimited review).

## B. Analysis

The facts in *Holmes* bear some resemblance to those in this case. In *Holmes*, the deceased victim had a contact gunshot wound to the chest, indicating the firearm had been held next to the victim's skin when fired. As a result of that shooting, Holmes was also convicted of premeditated first-degree murder and criminal possession of a firearm.

However, an important factual distinction is that, unlike Wimbley, Holmes did not deny that he was present when the firearm discharged a round into the victim's chest. Rather, Holmes' defense was that he had taken the weapon away from the attacking victim and that the firearm had discharged accidentally during a struggle over the weapon.

During the jury instruction conference at Holmes' trial, the judge and attorneys had an extended discussion on the definition of premeditation to be given to the jury. During the discussion, the prosecutor explained that the State's proposed instruction did not contain the statement that premeditation may arise in an instant because in *State v. Moncla*, 262 Kan. 58, 936 P.2d 727 (1997), the Supreme Court " 'didn't like that particular language.' " 272 Kan. at 494. The district court ultimately instructed the jury, with the prosecutor's approval, as follows: " 'Premeditation means to have thought over the matter beforehand. There is no particular length of time required for premeditation to occur.' " 272 Kan. at 497. Conspicuously (and deliberately) absent from the jury instruction was any mention that premeditation could occur in an instant or in a second.

Notwithstanding the State-approved jury instruction, the prosecutor in *Holmes* told the jury during the first portion of the State's closing argument: " 'Ladies and gentlemen, premeditation can occur in an instant. That's the law in the State of Kansas.' " Then, during the rebuttal portion of closing argument, the prosecutor

said that " 'premeditation can take a second.' " 272 Kan. at 497. On appeal, Holmes argued that the prosecutor purposefully misstated Kansas law on premeditation in closing argument and that the misstatement denied him the right to a fair trial. 272 Kan. at 498.

The *Holmes* court had no trouble finding the prosecutor's statement—that premeditation may occur in an instant—to be a misstatement of Kansas law. However, that finding was not an epiphanous declaration of new Kansas law. The *Holmes* court specifically noted *Moncla*'s rejection of the phrase that premeditation "may arise in an instant." 272 Kan. 499. Likewise, *Holmes* relied on the observation in *Jamison* "that the concept of 'premeditation,' as defined in PIK Crim. 3d 56.04(b), is more than the *instantaneous, intentional act of taking another's life.*" 272 Kan. at 499. Both *Moncla* and *Jamison* were decided prior to *Wimbley I.* Accordingly, *Holmes* was not an intervening change in the law with respect to the legal definition of premeditation.

*Wimbley III* found a "clear change in the law represented by the distinction between the Supreme Court's opinion in Wimbley's direct appeal and its opinion in *Holmes.*" *Wimbley III*, 2010 WL 597008, at *6. By "distinction," the panel was apparently referring to the difference in the ultimate dispositions, *i.e., Wimbley I* affirmed the convictions, whereas *Holmes* reversed. Otherwise, as we have already noted, Wimbley's complaint about the prosecutor's closing argument definition of premeditation was presented on direct appeal as part of a sufficiency of the evidence issue. In that context, the *Wimbley I* opinion essentially found that the trial judge's correct jury instruction remedied the prosecutor's incorrect statement of the law in closing argument. On the other hand, the issue presented in *Holmes* was prosecutorial misconduct, which the court found to be purposeful and prejudicial. The standards of review and analyses for those issues are different. Therefore, the fact that *Wimbley I* and *Holmes* reached different end results on different issues cannot be construed as a change in the law.

What *Wimbley III* must have divined from *Holmes* was the creation of a new rule that a prosecutor's closing argument misstatement of the definition of premeditation constitutes structural error, entitling the defendant to a new trial as a matter of law. *Wimbley*

*III*, 2010 WL 597008, at *6 ("Wimbley is entitled to relief as a matter of law."). But, of course, *Holmes* did not explicitly declare such a new structural error rule, and one cannot be implied from the analysis employed.

To the contrary, *Holmes* stated that its first task was to "determine if the prosecutor's misstatement of the Kansas law violated Holmes' right to a fair trial." 272 Kan. at 499. Such an endeavor, *i.e.*, a prejudice inquiry, would have been unnecessary if the error were structural. Likewise, *Holmes* found it necessary to look at the particular conduct of the prosecutor in that case to determine whether the misstatement was purposeful and to consider the jury instructions that were given on the different degrees of homicide. In short, *Holmes* looked at the prejudicial impact of the prosecutor's comments, rather than treating the misstatement of law as automatically reversible structural error. That process is confirmed by the opinion's summarized holding: "Here, the prosecutor, after informing the judge as to the law, deliberately misstated the law to the jury, and the trial court's failure to act to correct the misstatement deprived Holmes of his right to a fair trial." 272 Kan. at 499-500.

To conclude, *Holmes* did not change the legal definition of premeditation and did not create a new structural error rule. The case simply reiterated that a prosecutor's statement that premeditation can occur in an instant is a misstatement of the law and that if such an error denied the defendant a fair trial, a reversal for a new trial is required.

## UNTIMELY OR SUCCESSIVE MOTION

### A. *Standard of Review*

When the district court summarily denies a K.S.A. 60-1507 motion, an appellate court conducts de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to any relief. *Holt v. State*, 290 Kan. 491, 495, 232 P.3d 848 (2010); *Trotter v. State*, 288 Kan. 112, 132, 200 P.3d 1236 (2009).

## B. *Analysis*

As noted, this is Wimbley's second K.S.A. 60-1507 motion. The first was filed in February 2002 and supplemented in July 2002. The district court's denial of that motion was affirmed by the Court of Appeals in 2004. *Wimbley II*, 2004 WL 1191449. This second 1507 motion was filed in July 2008.

The district court is not required to entertain a second or successive motion for similar relief filed by the same prisoner absent a showing of exceptional circumstances. K.S.A. 60-1507(c); *Holt*, 290 Kan. at 495; Supreme Court Rule 183(c), (d) (2010 Kan. Ct. R. Annot. 255). " 'Exceptional circumstances are unusual events or intervening changes in the law that prevented the defendant from raising the issue in a preceding 60-1507 motion. [Citation omitted.]' " *Holt*, 290 Kan. at 496 (citing *State v. Mitchell*, 284 Kan. 374, 379, 162 P.3d 18 [2007]). The burden to make such a showing lies with the movant. *Holt*, 290 Kan. at 495.

In his second 1507 motion, Wimbley attempts to obtain relief for alleged prosecutorial misconduct in closing argument based upon a misstatement of the definition of premeditation. When he filed his direct appeal, Wimbley was cognizant of the prosecutor's incorrect statement of the law—that premeditation can occur in an instant—because he incorporated that complaint into his sufficiency of the evidence issue. Likewise, Wimbley understood the concept that reversible error could be predicated upon a prosecutor's improper closing argument statements because he raised that precise issue in his direct appeal, albeit based upon another statement. Obviously, then, Wimbley had the requisite knowledge to make his current prosecutorial misconduct claim in his first 1507 motion.

Wimbley argues that *Holmes'* intervening change in the law prevented him from raising the issue before now. As the State points out, Wimbley's intervening change in the law argument is unavailing for two reasons: *Holmes* was neither a change in the law nor an intervening event.

First, as noted above, *Holmes* did not redefine premeditation. *Moncla* had previously rejected the notion that premeditation "may arise in an instant," and *Jamison* had previously conveyed the concept "that 'premeditation' means something more than the instantaneous, intentional act of taking another's life." *Jamison*, 269 Kan.

at 573. Like the defendant in *Holmes*, Wimbley had the law he needed to pursue his current prosecutorial misconduct claim in either his direct appeal or in his first 1507 motion, without having to refer to the *Holmes* opinion.

Perhaps more importantly, Wimbley did have the benefit of the decision in *Holmes* by the time he filed his first 1507 motion. *Holmes* was filed November 9, 2001. Wimbley's first 1507 was filed some 3 months later, in February 2002, and was subsequently supplemented in July 2002. Because *Holmes* was filed *before* Wimbley's first 1507, it could not be an intervening change in the law between the first and second 1507 motions and could not have prevented Wimbley from raising any issues derived from *Holmes* in the first 1507 motion.

The Court of Appeals side-stepped the temporal problem with Wimbley's exceptional circumstances argument by finding that the attorneys appointed to represent him on his first 1507 motion were ineffective for failing to "call to any court's attention the clear change in the law" and for "failing to heed Wimbley's pleas to make this argument a part of his initial 60-1507 motion." *Wimbley III*, 2010 WL 597008, at *6. We find the Court of Appeals tactic to be procedurally and substantively flawed.

The first procedural hurdle is that, as the State points out, Wimbley has *never* raised an ineffective assistance of counsel claim based upon the performance of the attorney that represented him in the district court on his first 1507 motion. The Court of Appeals conjured up that claim on its own. Ordinarily, an appellate court does not consider an issue *sua sponte*, and appellate courts have often declared that an unbriefed issue is deemed waived or abandoned. See *State v. Martin*, 285 Kan. 994, Syl. ¶ 2, 179 P.3d 457, *cert. denied* 129 S. Ct. 192 (2008) (party that does not brief an issue is deemed to have waived or abandoned that issue); but *cf. Rhoten v. Dickson*, 290 Kan. 92, 117, 223 P.3d 786 (2010) (appellate court has power to address issue parties failed to raise in exceptional circumstances).

Likewise, Wimbley's second 1507 motion, now before us, did not raise the issue of the effectiveness of his representation on his first 1507 motion—either with regard to the trial attorney or to the appellate attorney. Accordingly, the district court did not consider

or rule on those ineffective assistance of counsel claims in this case. Granted, Wimbley does attempt to challenge his first 1507 appellate counsel's representation by raising the issue for the first time in this appeal. However, such a procedure is generally not allowed.

"Claims of ineffective assistance of counsel, as a general rule, cannot be raised for the first time on appeal. Rather, in most cases a district court must consider the evidence to determine the two-prong test for establishing ineffective assistance of counsel, which requires a defendant to show (1) counsel's performance, based upon the totality of the circumstances, was deficient in that it fell below an objective standard of reasonableness, and (2) defendant was prejudiced to the extent that there was a reasonable probability of success but for counsel's deficient performance." *Trotter*, 288 Kan. 112, Syl. ¶ 10.

Only under extraordinary circumstances, *i.e.*, where there are no factual issues and the two-prong ineffective assistance of counsel test can be applied as a matter of law based upon the appellate record, may an appellate court consider an ineffective assistance of counsel claim without a district court determination of the issue. *Trotter*, 288 Kan. 112, Syl. ¶ 11. As will be discussed below, this case does not present such an extraordinary circumstance.

Further, Wimbley's claim, embraced by the Court of Appeals, that his attorneys failed to heed his pleas to make the prosecutorial misconduct claim a part of Wimbley's first 1507 motion is curious, if not disingenuous. As noted, Wimbley filed a pro se supplemental brief in his direct appeal and has consistently displayed an ability to make himself heard by the courts. Moreover, it was Wimbley who prepared, filed, and supplemented the first 1507 motion, *i.e.*, Wimbley controlled the content of the 1507 motion *before* any attorney was appointed to represent him.

Finally, as noted above, ineffective assistance of counsel involves a two-prong test, the second prong of which requires a finding of sufficient prejudice to create a reasonable probability of success without counsel's deficient performance. *Trotter*, 288 Kan. 112, Syl. ¶ 10. Wimbley would have needed to establish that, if the attorneys appointed on the first 1507 motion had raised the issue of prosecutorial misconduct based on misstating the legal definition of premeditation in closing argument, there was a reasonable probability of obtaining a reversal.

In *Holmes,* the defendant acknowledged involvement in the shooting, but claimed self-defense and accident. Obviously, Holmes' intent and premeditation were squarely in issue. Accordingly, the prosecutor's misstatement of the legal definition of premeditation directly interfered with the defense theory and was obviously prejudicial.

In contrast, the victim here sustained seven gunshot wounds to the upper body, fired at close range, providing a strong indicator that whoever killed the victim did so in a deliberate and premeditated manner. Moreover, Wimbley proffered an alibi defense, denying that he had even seen the victim on the day of the shooting. One might ponder why the prosecutor was even arguing the definition of premeditation when the principal question was the identity of the killer and not the mindset of the shooter. Certainly, the case does not present the kind of exceptional circumstances that would permit the appellate court to find ineffective assistance of counsel as a matter of law without a prior determination in the district court.

With respect to the appellate counsel on the first 1507 motion, we note yet another impediment to the Court of Appeals' finding of ineffectiveness. In the appeal on the first 1507 motion, counsel raised the issue that the original trial counsel was ineffective for arguing during closing argument that the State had not proven premeditation. The contention was that the premeditation argument indicated that Wimbley was involved in the shooting, which was contrary to Wimbley's alibi defense. *Wimbley II,* 2004 WL 1191449, at *4. It would have been awkward, if not inconsistent, for appellate counsel to claim reversible error for the prosecutor's misstatement of the legal definition of premeditation, after claiming ineffective assistance of counsel for arguing the State had not proven premeditation. In other words, if the concept of premeditation was contrary to or inconsistent with Wimbley's alibi defense, then an inaccurate definition of premeditation would not have been prejudicial to the alibi defense theory.

In short, the ineffective assistance of counsel claims were not properly before the court and were not established as a matter of law. The Court of Appeals is reversed. The district court's denial of this second and successive 1507 motion is affirmed.

## DNA RETESTING

In his second 1507 motion, Wimbley also sought to invoke the provisions of K.S.A. 21-2512(a)(3) to obtain a retesting of the DNA found on the hammer of the firearm allegedly used to murder Haskins. K.S.A. 21-2512(a) provides:

"(a) Notwithstanding any other provision of law, a person in state custody, at any time after conviction for murder as defined by K.S.A. 21-3401, and amendments thereto, or for rape as defined by K.S.A. 21-3502, and amendments thereto, may petition the court that entered the judgment for forensic DNA testing (deoxyribonucleic acid testing) of any biological material that:

(1) Is related to the investigation or prosecution that resulted in the conviction;

(2) is in the actual or constructive possession of the state; and

(3) was not previously subjected to DNA testing, or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results."

The district court summarily denied Wimbley's request, finding a failure of the statutory requirements for testing because Wimbley had not shown that the DNA evidence on the gun was used to convict him as it was never introduced at trial, that the gun was in the State's possession, or that there were new testing methods available. The court also noted that Wimbley's own expert had informed the jury at trial that all of the State's DNA evidence was irreparably contaminated and unreliable, suggesting that retesting could not produce exculpatory evidence. See *State v. Smith*, 34 Kan. App. 2d 368, 373, 119 P.3d 679, *rev. denied* 280 Kan. 990 (2005) (court not required to appoint counsel and hold evidentiary hearing where files and records demonstrate conclusively that DNA testing could not lead to exculpatory evidence).

### A. *Standard of Review*

Citing to *State v. Lackey*, 42 Kan. App. 2d 89, 94, 208 P.3d 793 (2009), *rev. granted* 290 Kan. 1099 (2010) (pending), the Court of Appeals held that the summary denial of a request for DNA testing under K.S.A. 21-2512 presents a question of law over which an appellate court has unlimited review. We agree with that review standard.

## B. *Analysis*

To be eligible for testing under the statute, the biological material to be tested must meet three criteria, the first of which is that the material "[i]s related to the investigation or prosecution that resulted in the conviction." K.S.A. 21-2512(a)(1). It appears that the district court in this instance read that prerequisite to mean that the material must have been actually used at trial as part of the evidence presented by the State to convict the defendant. The district court's construction of the statute is too restrictive. All that is required is that the material be *related* to either the investigation or the prosecution. Unquestionably, the biological material on the murder weapon was intimately related to both the investigation and prosecution of Wimbley that resulted in his murder conviction. The district court erred in finding that Wimbley could not obtain testing of the biological material on the firearm under K.S.A. 21-2512 because the State had not presented evidence of that material at the trial.

The second requirement is that the material is "in the actual or constructive possession of the state." K.S.A. 21-2512(a)(2). The district court found that Wimbley had failed to make a showing that the State possessed the firearm. The Court of Appeals took issue with that finding because a defendant in Wimbley's circumstance would have no ability to prove whether the State still had possession of the gun. Moreover, the Court of Appeals cited to *Bruner v. State*, 277 Kan. 603, 606, 88 P.3d 214 (2004), for the proposition that K.S.A. 21-2512 only requires a prisoner to allege that the State has possession of evidence.

In his request for retesting, Wimbley recited that the State had done DNA testing on the murder weapon and had used the results at the preliminary hearing to get Wimbley bound over for trial. Obviously, the State had to actually or constructively possess the firearm in order to have the initial DNA testing performed on it. If the State subsequently divested itself of possession of the firearm, then it would need to be prepared to explain the divestiture. Contrary to the district court's ruling, Wimbley made a sufficient initial showing that the State possessed the biological material he wanted tested.

The third statutory prerequisite is that the biological material has not been previously subjected to DNA testing or that it could be subjected to "retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results." K.S.A. 21-2512(a)(3). The Court of Appeals was troubled that the record did not provide a clear history of the DNA testing of the murder weapon. *Wimbley III*, 2010 WL 597008, at *8. Further, the panel was "at a loss to know whether DNA testing has actually been performed on the gun." *Wimbley III*, 2010 WL 597008, at *9.

The Court of Appeals' confusion over the existence of prior testing is curious. Wimbley did not allege that the firearm had not previously been subjected to DNA testing. To the contrary, his petition acknowledged that DNA testing results were admitted at his preliminary hearing and recited that "[p]etitioner seeks to have the DNA found on the hammer of the alleged weapon *retested*." (Emphasis added.)

The petition also explains that the State subsequently obtained a court order for new blood and saliva samples from Wimbley. *Wimbley III* recited a portion of the opinion from the first 1507 appeal that related that circumstance:

" 'A lab report showing Wimbley's DNA was on the handgun was admitted at the preliminary hearing. Based on comments by the prosecutor at another hearing, the DNA for that test came from an unrelated 1998 case where Wimbley was the victim and a lab investigator took blood on a hair and other items. The officer who saw Wimbley bleeding in that case apparently did not state it was Wimbley's blood that was collected. To counter Wimbley's trial counsel's argument that the 1998 sample may not have been Wimbley's blood, the State requested Wimbley to provide a DNA sample for testing, which was granted. *Wimbley II*.' " 2010 WL 597008, at *8.

Wimbley's actual complaint appears to be contained in his allegation that "the state never introduced any DNA evidence concerning petitioner's DNA found on the hammer of the gun *as compared with the new DNA samples ordered by the court*." (Emphasis added.) The unknown is the DNA profile from Wimbley's court-ordered bodily fluid samples. What is needed to determine whether DNA will exculpate Wimbley is for the State to disclose

the DNA profile from the new bodily fluid samples, if it exists, so that it can be compared to the *existing* DNA profile from the murder weapon. In other words, the requested retesting of the murder weapon will not assuage the concerns of either Wimbley or the Court of Appeals without a concurrent request for DNA testing of the bodily fluid samples for comparison purposes. Wimbley did not request testing of the new, court-ordered samples of his bodily fluids. Therefore, the requested retest of the murder weapon cannot, standing alone, produce noncumulative exculpatory evidence, which is the determination to be made by the district court under K.S.A. 21-2512(c).

Moreover, Wimbley has made no showing whatsoever that there is "a reasonable likelihood of more accurate and probative results" of the murder weapon DNA profile if it were to be retested. His allegation that there are new testing procedures since his conviction are totally unsupported, conclusory, and insufficient to meet the requirement of K.S.A. 21-2512(a)(3). Accordingly, the district court was justified in declining Wimbley's request for retesting of the murder weapon and on that issue, the district court is affirmed.

To reiterate, we affirm the district court's summary denial of Wimbley's 60-1507 motion with respect to his claims of ineffective assistance of counsel and his request for DNA retesting. Given its order for a new trial, the Court of Appeals panel determined that Wimbley's other issues—specifically the impact of *State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006), and the newly discovered evidence in the form of an affidavit from a recanting witness—were moot. Because we are reversing the order for a new trial, those additional issues are no longer moot, and we remand the case to the Court of Appeals to resolve the remaining issues.