NOT DESIGNATED FOR PUBLICATION

No. 126,831

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WILL A. WIMBLEY,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY L. SYRIOS, judge. Submitted without oral argument. Opinion filed December 6, 2024. Affirmed in part, reversed in part, and remanded with directions.

*Will A. Wimbley*, appellant pro se.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ATCHESON, P.J., HURST and PICKERING, JJ.

PER CURIAM:  Will A. Wimbley appeals the district court's summary denial of his fifth K.S.A. 60-1507 motion and his request for DNA retesting. The district court correctly summarily denied Wimbley's 60-1507 motion as untimely and successive because Wimbley failed to demonstrate the manifest injustice or exceptional circumstances necessary to excuse either procedural defect. However, the district court erred in summarily denying Wimbley's request for DNA retesting under K.S.A 21-2512,

1

and that decision is therefore reversed and remanded for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

It is necessary to detail Wimbley's previous postconviction motions to address whether the district court properly dismissed his current 60-1507 motion. In 1999, a jury convicted Wimbley of premeditated first-degree murder and criminal possession of a firearm. Wimbley directly appealed his convictions to the Kansas Supreme Court, arguing, among other things, there was insufficient evidence to support his convictions. See *State v. Wimbley*, 271 Kan. 843, 844, 26 P.3d 657 (2001). After reviewing the evidence supporting Wimbley's convictions, the court rejected his claims and affirmed his convictions. 271 Kan. at 844-55.

In 2002, Wimbley filed his first 60-1507 motion in which he asserted multiple allegations of ineffective assistance of trial counsel, challenged the jury instructions, and challenged the State's evidence. See *Wimbley v. State*, No. 90,025, 2004 WL 1191449, at *3 (Kan. App. 2004) (unpublished opinion). Following a nonevidentiary hearing, the district court denied the motion. 2004 WL 1191449, at *3. Wimbley appealed to this court and claimed that:

> (1) his trial counsel's "admission that Wimbley's DNA was on the murder weapon, combined with counsel's suggestion in closing argument that the jury consider lesser included offenses, despite Wimbley's alibi defense, denied Wimbley his rights under the Sixth Amendment to the United States Constitution to counsel and to due process and a fair trial";
> (2) his "trial counsel was ineffective for failing to investigate the case, conceding in opening statement that Wimbley's DNA was on the murder weapon, and failing to object to prosecutorial misconduct during closing arguments";

(3) "the district court erred by failing to conduct an evidentiary hearing on his 60-1507 motion"; and

(4) "the district court erred by failing to make sufficient findings of fact and conclusions of law to support its decision." 2004 WL 1191449, at *3.

A previous panel of this court rejected all of Wimbley's claims and accordingly affirmed the district court's denial of the motion. 2004 WL 1191449, at *4-10.

In 2008, Wimbley filed his second 60-1507 motion, "asserting his 'actual innocence' and making claims of prosecutorial misconduct, ineffective assistance of trial and appellate counsel, and erroneous admission of evidence." *Wimbley v. State*, No. 101,595, 2010 WL 597008, at *3 (Kan. App. 2010) (unpublished opinion). Wimbley "also requested a new trial based on an affidavit containing a recantation from [a] witness . . . and request[ed] DNA 'retesting' of the murder weapon." 2010 WL 597008, at *3. The district court summarily denied the motion, finding it untimely and successive and that Wimbley failed to establish the manifest injustice or exceptional circumstances necessary to excuse either. 2010 WL 597008, at *4. The district court further denied Wimbley's request for a new trial based on the witness's recantation and denied his request to retest DNA found on the murder weapon. 2010 WL 597008, at *4.

A previous panel of this court reversed the district court's summary denial of Wimbley's second 60-1507 motion, finding his first 60-1507 motion attorneys rendered ineffective assistance of counsel in failing to argue prosecutorial error based on the intervening change in the law announced by the Kansas Supreme Court in *State v. Holmes*, 272 Kan. 491, 499-500, 33 P.3d 856 (2001). 2010 WL 597008, at *5. The panel determined Wimbley was entitled to relief as a matter of law under *Holmes* and therefore reversed his convictions and remanded the case for a new trial. *Wimbley,* 2010 WL 597008, at *6. The panel further reversed the district court's summary denial of Wimbley's request for DNA retesting. 2010 WL 597008, at *9. The panel found

3

Wimbley's two remaining claims regarding the proper analysis of evidence of prior conduct under *State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006) and the newly discovered evidence in the form of the witness's recantation were moot and therefore declined to reach them. *Wimbley,* 2010 WL 597008, at *7.

The Kansas Supreme Court disagreed and therefore reversed the panel's decision and affirmed the district court's summary denial of Wimbley's second 60-1507 motion and request for DNA retesting. See *Wimbley v. State*, 292 Kan. 796, 812, 275 P.3d 35 (2011) ("[W]e affirm the district court's summary denial of Wimbley's 60-1507 motion with respect to his claims of ineffective assistance of counsel and his request for DNA retesting."). The court then remanded the case to this court for consideration of Wimbley's remaining two issues, finding they were no longer moot. 292 Kan. at 812.

On remand, a panel of this court rejected Wimbley's remaining two claims and affirmed the district court's summary denial of his second 60-1507 motion. See *Wimbley v. State*, No. 101,595, 2013 WL 1688934 (Kan. App. 2013) (unpublished opinion). The panel concluded "the 2006 *Gunby* opinion does not constitute exceptional circumstances to justify Wimbley's most recent K.S.A. 60-1507, nor does it require his 1999 convictions to be set aside." 2013 WL 1688934, at *2. The panel further determined that "nothing in [the witness'] affidavit suggests that Wimbley did not kill his ex-girlfriend. Rather, the affidavit merely suggests that she did not see Wimbley or anyone else cleaning the carpet at the murder scene with bleach." 2013 WL 1688934, at *3. Moreover, according to the panel, there was still overwhelming evidence of Wimbley's guilt beyond a reasonable doubt even without the witness testimony that Wimbley attempted to clean the carpet at the murder scene. The panel therefore ultimately found: "In light of the overwhelming circumstantial evidence presented at trial, we do not find that [the witness'] recantation—that she did not see anyone clean the carpet at the murder scene with bleach—exonerates Wimbley even if it were true." 2013 WL 1688934, at *4. The panel accordingly

4

concluded "the district court did not [err] in summarily denying Wimbley's most recent K.S.A. 60-1507 motion." 2013 WL 1688934, at *4.

In 2017, Wimbley filed his third 60-1507 motion, asserting "claims of ineffective assistance of trial counsel and counsel that represented him on his first 60-1507 motion, prosecutorial misconduct, and evidentiary issues, including the DNA testing done on the murder weapon." *Wimbley v. State*, No. 118,336, 2018 WL 3946273, at *1 (Kan. App. 2018) (unpublished opinion). The district court "summarily denied Wimbley's motion because it was untimely, successive, and failed to establish manifest injustice to overcome the time limitations or exceptional circumstances to warrant the consideration of a successive motion." 2018 WL 3946273, at *1. A previous panel of this court agreed and affirmed the district court's summary denial of the third 60-1507 motion. 2018 WL 3946273, at *1. The panel reasoned that, "although Wimbley maintains his innocence, he does so unconvincingly." 2018 WL 3946273, at *2. The panel observed that "Wimbley's convictions were affirmed on direct appeal, his two previous 60-1507 motions provided him no relief, and his guilt is supported by the record. Therefore, despite his claims otherwise, Wimbley has not shown that it was more likely than not that no reasonable juror would have convicted him." 2018 WL 3946273, at *2. Therefore, according to the panel, "Wimbley has not met the burden of showing us that manifest injustice will result without the extension of the time limitation to file his motion." 2018 WL 3946273, at *2. The panel further concluded Wimbley's motion was successive because "[e]very court from which Wimbley has sought relief has previously denied his claims." 2018 WL 3946273, at *3. According to the panel, "Wimbley [did] not argue that any unusual events or changes in the law allow[ed] him to overcome the successive nature of his [third] 60-1507 motion." 2018 WL 3946273, at *3.

In 2019, Wimbley filed his fourth 60-1507 motion, which the district court likewise summarily denied as untimely and successive. *Wimbley v. State*, No. 122,790, 2021 WL 5501555, at *2-3 (Kan. App. 2021) (unpublished opinion). A previous panel of

5

this court affirmed, reasoning that "[i]n each of his K.S.A. 60-1507 motions, [Wimbley] has repeatedly asserted the same—or substantially similar—claims regarding his trial counsel, his appellate counsel, and his K.S.A. [60-]1507 counsel. Furthermore, Wimbley makes no claim of actual innocence in his K.S.A. 60-1507 motion." 2021 WL 5501555, at *4. The panel therefore found "that Wimbley's motion was untimely and that he . . . failed to establish manifest injustice to justify the belated filing of his most recent motion." 2021 WL 5501555, at *4. The panel further reasoned that Wimbley did not "point to any changes in the law or unusual circumstances that might validate his filing of successive motions." 2021 WL 5501555, at *4. The panel therefore did "not find exceptional circumstances [were] present that would justify reaching the merits of Wimbley's fourth K.S.A. 60-1507 motion." 2021 WL 5501555, at *4.

In 2022, Wimbley filed his fifth 60-1507 motion—the subject of this appeal—in which he alleged: (1) ineffective assistance of trial counsel; (2) prosecutorial misconduct; (3) ineffective assistance of his direct appeal counsel; (4) ineffective assistance of his first 60-1507 motion counsel; and (5) newly discovered evidence. Wimbley also requested DNA retesting concerning the murder weapon. The district court summarily denied Wimbley's motion as untimely and successive without conducting an evidentiary hearing, reasoning that Wimbley failed to establish the manifest injustice or exceptional circumstances necessary to excuse the untimely and successive nature of his motion. The district court further determined that Wimbley was not entitled to DNA retesting.

Wimbley timely appealed the district court's summary denial of his 60-1507 motion. Wimbley subsequently filed a motion to proceed pro se in this appeal, which this court granted. After Wimbley filed his pro se appellate brief in this court, the State moved to strike Wimbley's brief for failure to comply with Kansas Supreme Court Rules 6.02(a)(4) and 6.02(b) (2024 Kan. S. Ct. R. at 36). This court denied the State's motion,

6

reasoning that "[Wimbley]'s brief contains some citations to the record on appeal, which is enough to meet the minimum requirements of Supreme Court Rule 6.02."

DISCUSSION

After spending more than twenty years in prison and filing multiple collateral attacks of his sentence, Wimbley appeals the district court's dismissal of his most recent 60-1507 motion and request for DNA retesting. Wimbley claims that the district court erred in summarily denying his 60-1507 motion as untimely and successive—primarily arguing the merits of his claims—and that the court erred in denying his petition for DNA retesting.

I. THE DISTRICT COURT DID NOT ERR IN SUMMARILY DENYING WIMBLEY'S FIFTH 60-1507 MOTION AS UNTIMELY AND SUCCESSIVE

A 60-1507 motion is a mechanism by which a movant can collaterally attack their conviction or sentence because "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or is otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 2023 Supp. 60-1507(b); *Rowland v. State*, 289 Kan. 1076, Syl. ¶ 1, 219 P.3d 1212 (2009). Defendants must generally file a 60-1507 motion within one year of the final order of the last appellate court in the state to exercise jurisdiction on direct appeal or the end of appellate jurisdiction. K.S.A. 2023 Supp. 60-1507(f)(1). A movant is also prohibited from raising issues in a 60-1507 motion that were or should have been raised on direct appeal or in a previous 60-1507 motion. K.S.A. 2023 Supp. 60-60-1507(c); *State v. Brown*, 318 Kan. 446, Syl. ¶¶ 1, 3, 543 P.3d 1149 (2024); Kansas Supreme Court Rule 183(c)(3),(d) (2024 Kan. S. Ct. R. at 240-41). "Because a movant is presumed to have listed all grounds for

7

relief in his or her initial K.S.A. 60-60-1507 motion, a prisoner must show exceptional circumstances to justify the filing of a successive motion." *State v. Mitchell*, 315 Kan. 156, 160, 505 P.3d 739 (2022).

When evaluating a 60-1507 motion, a district court has three options:  (1) determine the motion, files, and case records conclusively show the petitioner is not entitled to relief and summarily deny the motion without a hearing; (2) determine from the record that a preliminary hearing should be held because a potentially substantial issue exists, and if the court determines there is no substantial issue, the court may deny the motion; or (3) determine from the record or preliminary hearing that a substantial issue is presented requiring a full hearing. *State v. Adams*, 311 Kan. 569, 577-78, 465 P.3d 176 (2020). This court's standard of review turns on which option the district court applied. 311 Kan. at 578. When, as here, the district court summarily denies the 60-1507 motion, this court conducts a de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to any relief. K.S.A. 2023 Supp. 60-1507(b); *Noyce v. State*, 310 Kan. 394, 398, 447 P.3d 355 (2019); Kansas Supreme Court Rule 183(f).

"A movant has the burden to prove his or her K.S.A. 60-1507 motion warrants an evidentiary hearing" by a preponderance of the evidence. *Thuko v. State*, 310 Kan. 74, Syl. ¶ 3, 444 P.3d 927 (2019). A movant must include some evidentiary support and make more than conclusory allegations to demonstrate the need for an evidentiary hearing. *State v. Sprague*, 303 Kan. 418, 426-27, 362 P.3d 828 (2015). "In stating the evidentiary basis, the K.S.A. 60-1507 motion must set forth a factual background, names of witnesses, or other sources of evidence to demonstrate that the movant is entitled to relief." *Swenson v. State*, 284 Kan. 931, Syl. ¶ 2, 169 P.3d 298 (2007).

Wimbley claims that the following six issues at trial, on direct appeal, and from his first 60-1507 motion, entitle him to post-conviction relief pursuant to K.S.A. 60-1507:

8

"Issue One: Petitioner contends he was denied due process and a fair trial because the State, acting in bad faith, presented false and misleading evidence at the preliminary hearing that petitioner's DNA was on the hammer of the murder weapon, over counsel['s] objection, so the preliminary hearing Judge would bound [*sic*] [him] over for trial and then got a court-order[] to take petitioner's DNA from his body to compare to the so-called DNA on the hammer of the murder weapon, then, acting in bad faith, suppressed the scientific exculpatory DNA evidence.

"Issue Two: Counsel was ineffective based on counsel's failure to discover or present to the fact-finder the very exculpatory evidence that demonstrates petitioner's actual innocence.

"Issue Three: Direct appeal counsel was ineffective for not reading the record on appeal, for not staying the appeal and seek[ing] the measure of a Van Cleave [h]earing to remand back to the district court for ineffective assistance of trial counsel for not objecting or rais[ing] such challenge to the State's suppression of petitioner's new, court-ordered bodily fluid exculpatory DNA test results, and for not raising the Brady [v]iolation.

"Issue Four: Request to retest or test DNA evidence.

"Issue Five: Ineffective assistance of counsel based on counsel's failure to discover, by objecting, and present to the jury the very exculpatory evidence that demonstrate petitioner's actual innocence, because the State, acting in bad faith, introduced false and misleading evidence at the preliminary hearing that petitioner's DNA was on the hammer of the murder weapon and had the preliminary [hearing] judge bound [*sic*] him over for trial and then got a court-order to take [his] DNA from his body to compare to the so-called DNA that was on the hammer of the murder weapon, then, acting in bad faith, withheld the exculpatory results of the DNA evidence from the defense at trial that demonstrates petitioner's actual innocence.

"Issue Six: The first 60-60-1507 counsel . . . was ineffective based on counsel['s] failure to discover or present to the district court judge at the non-evidentiary hearing the very exculpatory evidence that demonstrates his actual innocence."

Through these issues Wimbley primarily reargues the merits of his claims—but the district court denied his 60-1507 motion as untimely and successive without

9

addressing the merits. Therefore, this court will determine if the district court erred in those determinations before determining whether the merits of Wimbley's claims must be addressed.

A. *Wimbley failed to establish the manifest injustice necessary to permit his untimely filing.*

The court can extend the one-year time limit for filing a 60-1507 motion "only to prevent manifest injustice, which is defined in this context as being obviously unfair or shocking to the conscience." *Noyce*, 310 Kan. 394, Syl. ¶ 2; K.S.A. 2023 Supp. 60-1507(f)(2); Kansas Supreme Court Rule 183(c)(4). In finding manifest injustice, "the court's inquiry shall be limited to determining why the prisoner failed to file the motion within the one-year time limitation or whether the prisoner makes a colorable claim of actual innocence." K.S.A. 2023 Supp. 60-1507(f)(2)(A). To establish a claim of actual innocence, Wimbley must "show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2023 Supp. 60-1507(f)(2)(A). Wimbley carries the burden to establish that his fifth 60-1507 motion meets the manifest injustice exception warranting extension of the one-year filing time limit. *State v. Roberts*, 310 Kan. 5, Syl. ¶ 5, 444 P.3d 982 (2019).

The Kansas Supreme Court issued its mandate in Wimbley's direct appeal in August 2001, but the one-year time limit for filing a 60-1507 motion was not added to the statute until July 2003—making his deadline for filing a 60-1507 motion alleging ineffective assistance of trial or direct appeal counsel June 30, 2004. *Noyce* 310 Kan. at 399. To the extent Wimbley alleges ineffective assistance of his first 60-1507 counsel, his deadline for filing a 60-1507 motion was September 14, 2005—one year after the Kansas Supreme Court denied his petition for review in that case on September 14, 2004. *Wimbley v. State*, No. 90,025, 2004 WL 1191449 (Kan. App.) (unpublished opinion), *rev. denied* 278 Kan. 852 (2004). See K.S.A. 2023 Supp. 60-1507(f)(1)(C); *Rowell v. State*,

60 Kan. App. 2d 235, Syl. ¶ 3, 490 P.3d 78 (2021) ("The one-year period for filing a 60-1507 motion to challenge counsel's representation in a prior 60-1507 proceeding begins when the mandate issued on that prior 60-1507 proceeding."). Wimbley's fifth 60-1507 motion, which is the subject of this appeal, was filed over 17 years beyond those deadlines and is obviously untimely, which Wimbley does not appear to dispute. See K.S.A. 2023 Supp. 60-1507(f)(1).

Rather, Wimbley argues that manifest injustice will result if this court determines his current 60-1507 claims are untimely. First, Wimbley claims he "did raise the issues in his first 60-1507 motion," but the "[c]ounsel who represented him in his first habeas corpus motion . . . was constitutionally deficient for failure to perfect the issues by amendment and argue the issues at [Wimbley]'s non-evidentiary hearing." Second, Wimbley claims he makes a colorable claim of actual innocence. Wimbley argues his trial counsel's failure to present evidence of tire tracks and footwear impressions that would establish his innocence demonstrates that denial of his motion would create manifest injustice. According to Wimbley, "the 'unusual event' in this extraordinary case is the new evidence, the scientific exculpatory footwear and tire tread pattern impressions that counsel failed to discover or present to the fact-finder the very exculpatory evidence that demonstrates petitioner's actual innocence."

These arguments are unavailing. First, Wimbley offers no compelling explanation for why he failed to raise these claims of actual innocence in his second 60-1507 motion. Wimbley does not claim the evidence of innocence was unavailable prior to his current—which is his fifth—60-1507 motion. In fact, Wimbley apparently concedes he was aware of the claim of ineffective assistance of trial counsel related to the alleged evidence of his actual innocence but still fails to explain why he did not raise the issue in his prior 60-1507 motions. Additionally, if Wimbley believes that his first 60-1507 motion counsel rendered ineffective assistance in failing to argue that his trial counsel or direct appeal counsel rendered ineffective assistance by not presenting evidence of his actual

11

innocence, he should have raised this issue in his second 60-1507 motion. It appears Wimbley knew about the tire tread and footwear impression arguments before or during his trial. Wimbley has therefore failed to demonstrate that the one-year timeline for filing his 60-1507 motion should be extended to prevent manifest injustice.

Wimbley has also failed to establish a colorable claim of actual innocence excuses his late filing. The Kansas Supreme Court summarized the evidence of Wimbley's guilt on direct appeal when it rejected Wimbley's challenge to the sufficiency of the evidence supporting his convictions:

> "The evidence presented at trial showed that the defendant and the victim had a tumultuous relationship and that the defendant previously had become angry and violent when [the victim] tried to end the relationship. The bloodstains consistent with the victim's DNA and spent cartridges from the murder weapon that were found at the defendant's uncle's house, as well as the discovery of the murder weapon and a t-shirt bearing the victim's blood near a house where the defendant's car had been parked shortly after the murder, all point to the defendant as the killer. The defendant's fingerprints on a cartridge holder which carried ammunition consistent with that used in the murder weapon and his fingerprint on the day planner found near the body, as well as further evidence tending to show that the defendant attempted to clean up the carpet at the murder scene using bleach and dropped out of sight after the murder, linked the defendant to the crime.
>
>             . . . .
>
> "[A]s noted above, there is sufficient circumstantial evidence from which a jury could find beyond a reasonable doubt that the defendant shot and killed the victim. Therefore, without question there was sufficient evidence for a rational juror to find that the defendant did in fact possess the firearm used in the killing." *Wimbley*, 271 Kan. at 848-50.

As a panel of this court stated when it affirmed the district court's summary denial of one of Wimbley's previously 60-1507 motions, "although Wimbley maintains his innocence, he does so unconvincingly." *Wimbley*, 2018 WL 3946273, at *2.

12

Another panel of this court also rejected Wimbley's previous claim of actual innocence related to a witness's recanting affidavit: "[E]ven without [the witness'] testimony that Wimbley attempted to clean up the carpet at the murder scene using bleach, there still is overwhelming evidence in the record upon which a jury could rely in finding Wimbley guilty of first-degree murder beyond a reasonable doubt." *Wimbley*, 2013 WL 1688934, at *3.

Wimbley has gotten no closer to making a colorable claim of actual innocence in his latest motion. He simply cannot maintain the tire tread and shoe impression evidence would create a factual scenario where no reasonable jury would have convicted him. See *Beauclair v. State*, 308 Kan. 284, 294, 419 P.3d 1180 (2018). This court accordingly affirms the district court's finding that Wimbley's motion was inexcusably untimely. That alone is sufficient to affirm the district court's summary denial of Wimbley's fifth 60-1507 motion. However, for the sake of thoroughness in reviewing the district court's decision, this court will also analyze the district court's summary denial of Wimbley's motion as successive.

B. *Wimbley's motion is successive, and he has failed to carry his burden of establishing the exceptional circumstances necessary to permit his successive motion.*

Defendants are generally prohibited from filing second or successive 60-1507 motions seeking similar postconviction relief. See K.S.A. 2023 Supp. 60-1507(c) ("The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."); see also Kansas Supreme Court Rule 183(d). A successive 60-1507 motion is one in which the movant "asserts claims that were decided, or which could have been decided, on direct appeal or in [previous 60-1507 motions]." *Mitchell*, 315 Kan. at 160. However, a court may hear a second or successive 60-1507 motion if the "alleged errors affect constitutional rights and exceptional circumstances justify raising the successive motion." *Brown*, 318 Kan. 446,

13

Syl. ¶ 1. "Exceptional circumstances are unusual events or intervening changes in the law that prevented the defendant from raising the issue in a preceding 60-1507 motion." *Mitchell*, 315 Kan. 156, Syl. ¶ 6. Wimbley carries the burden to establish these exceptional circumstances. *Dawson v. State*, 310 Kan. 26, Syl. ¶ 4, 444 P.3d 974 (2019).

Wimbley argues that he has established exceptional circumstances to permit his successive motion because he "presented a colorable claim of actual innocence based on new evidence and it could serve as an 'unusual event' sufficient to prove a gateway past the procedural hurdle" of his successive motion:

> "[Wimbley] asserts that his colorable [claim] of actual innocence is based on new evidence, his Brady Violation which 60-1507 counsel did not perfect by amendment, counsel did not raise the ineffective assistance of trial counsel for failure to make a contemporaneous objection or raise such challenge to the State's suppression of [Wimbley]'s exculpatory new, court-ordered bodily fluid DNA test results that was compared to the so-called DNA on the hammer of the murder weapon, counsel did not argue [Wimbley]'s exculpatory footwear and exculpatory tire tread pattern impressions that [Wimbley] raised in his first 60-1507 motion. Counsel did not give any argument in favor of [Wimbley]'s issues at the non-evidentiary hearing. This serve[s] as an 'unusual event' sufficient to provide [a] gateway past a procedural hurdle."

Wimbley concludes he has "demonstrated exceptional circumstances, by persuading this Court that his first 60-1507 counsel . . . was ineffective in failing to raise all claims of [his] trial attorney['s] . . . ineffectiveness."

Wimbley fails to explain why he could not have raised these issues in his previous 60-1507 motions. These events—which are not newly discovered and thus do not demonstrate why Wimbley could not have raised these claims in any of his prior 60-1507 motions—do not constitute exceptional circumstances sufficient to excuse his successive motion. See *Mitchell*, 315 Kan. 156, Syl. ¶ 6. Moreover, as already explained above,

14

Wimbley has not made a colorable claim of actual innocence. This court therefore affirms the district court's summary denial of Wimbley's motion as successive.

C. *Wimbley waived or abandoned his claim that the district court's findings of fact and conclusions of law failed to comply with Kansas Supreme Court Rule 183(j).*

As a final matter, Wimbley passingly claims "[t]he district court did not satisfy Supreme Court Rule 183(j)," and he "object[s] to inadequate findings of facts and conclusion." However, Wimbley simply asserts a fleeting, bare conclusion and offers no argument about how the district court's findings of fact or conclusions of law violated Rule 183(j). This claim is therefore waived or abandoned. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) ("Issues not briefed or not adequately briefed are deemed waived or abandoned . . . A point raised incidentally in a brief but not argued is also deemed abandoned.").

II. THE DISTRICT COURT ERRED IN SUMMARILY DENYING WIMBLEY'S REQUEST FOR DNA RETESTING

Defendants convicted of first-degree murder or rape may "petition for DNA testing of biological material related to the investigation or prosecution that resulted in the conviction." *State v. Harris*, 318 Kan. 926, 928-29, 550 P.3d 311 (2024); see K.S.A. 21-2512(a). One of these defendants in state custody:

> "may petition the court that entered the judgment for forensic DNA testing (deoxyribonucleic acid testing) of any biological material that:
> > "(1) Is related to the investigation or prosecution that resulted in the conviction;
> > "(2) is in the actual or constructive possession of the state; and
> > "(3) was not previously subjected to DNA testing, or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results." K.S.A. 21-2512(a).

15

The district court "shall order DNA testing pursuant to a petition made under [K.S.A. 21-2512(a)] upon a determination that testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced." K.S.A. 21-2512(c).

When a defendant's petition for DNA testing meets the requirements of K.S.A. 21-2512(a) and subsection (c), "the district court must order DNA testing of the biological material specified in the petition." *State v. Angelo*, 316 Kan. 438, Syl. ¶ 4, 518 P.3d 27 (2022). The district court's summary denial—that is a denial without a hearing—of a request for DNA testing under K.S.A. 21-2512(a) is a question of law subject to unlimited appellate review. 316 Kan. 438, Syl. ¶ 1.

In denying Wimbley petition for DNA retesting the district court relied on the Kansas Supreme Court's decision affirming the district court's summary denial of Wimbley's request for DNA retesting in his second 60-1507 motion. But the Kansas Supreme Court's decision in that previous case was based on a specific circumstance that Wimbley corrected in his current request. The Kansas Supreme Court explained the complicated history of the DNA testing in Wimbley's case:

> "'A lab report showing Wimbley's DNA was on the handgun was admitted at the preliminary hearing. Based on comments by the prosecutor at another hearing, the DNA for that test came from an unrelated 1998 case where Wimbley was the victim and a lab investigator took blood on a hair and other items. The officer who saw Wimbley bleeding in that case apparently did not state it was Wimbley's blood that was collected. To counter Wimbley's trial counsel's argument that the 1998 sample may not have been Wimbley's blood, the State requested Wimbley to provide a DNA sample for testing, which was granted.'" *Wimbley*, 292 Kan. at 811 (quoting *Wimbley*, 2010 WL 597008, at *8).

16

Wimbley argues that his conviction is based, in part, on a DNA comparison of a blood sample taken from an unrelated case, and the court failed to demonstrate the blood sample from the unrelated case belonged to him.

The Kansas Supreme Court found that Wimbley satisfied the first two criteria of subsection K.S.A. 21-2512(a) in that the material to be tested was related to the prosecution that resulted in his conviction and was in the possession of the state. However, the court found that Wimbley failed to meet the third criteria of subsection (a) requiring that the material has not been previously tested or retesting with new techniques would "'provide a reasonable likelihood of more accurate and probative results.'" 292 Kan. at 811-12. The court ultimately denied Wimbley's request for DNA retesting because he did not make a concurrent request for DNA testing of his *new* bodily fluid samples for purposes of comparison to the samples on the murder weapon. The Kansas Supreme Court explained the prior failing and how Wimbley must correct it:

> "Wimbley's actual complaint appears to be contained in his allegation that 'the state never introduced any DNA evidence concerning petitioner's DNA found on the hammer of the gun *as compared with the new DNA samples ordered by the court*.' (Emphasis added.) The unknown is the DNA profile from Wimbley's court-ordered bodily fluid samples. What is needed to determine whether DNA will exculpate Wimbley is for the State to disclose the DNA profile from the new bodily fluid samples, if it exists, so that it can be compared to the *existing* DNA profile from the murder weapon. In other words, the requested retesting of the murder weapon will not assuage the concerns of either Wimbley or the Court of Appeals without a concurrent request for DNA testing of the bodily fluid samples for comparison purposes. Wimbley did not request testing of the new, court-ordered samples of his bodily fluids. Therefore, the requested retest of the murder weapon cannot, standing alone, produce noncumulative exculpatory evidence, which is the determination to be made by the district court under K.S.A. 21–2512(c)." 292 Kan. at 811-12.

17

Unlike his previous request, here Wimbley *did* make a concurrent request for DNA testing of his new, court-ordered bodily fluid samples to compare it to the results of his requested retesting of the DNA recovered from the murder weapon: "Petitioner seek[s] to invoke provisions of K.S.A. 21-2512(a)(3) to obtain a retesting *of the DNA that was taken out of his body* and compared to the so-called DNA found on the hammer of the firearm allegedly used to murder the victim." (Emphasis added.) In fact, in an apparent attempt to remedy his previous defect, Wimbley specifically explains the different DNA samples and appears to model his request using language from the Kansas Supreme Court's previous opinion denying retesting:

> "The State subsequently obtained a Court Order for new blood and saliva samples from [Wimbley]. [Wimbley]'s actual complaint is that he request[s] testing of the new, court-ordered samples of his bodily [fluids] and compar[ison] to the so-called DNA that was on the hammer of the murder weapon, and the State never introduced any DNA evidence concerning [Wimbley]'s DNA found on the hammer of the gun as compared with the new DNA samples ordered by the court. The unknown is the DNA profile from [Wimbley]'s court-ordered bodily fluid samples. What is needed to determine whether DNA will exculpate [Wimbley] is for the State to disclose the DNA profile from the new bodily [fluid] samples, if it exists, so that it can be compared to the existing DNA profile from the murder weapon. [Wimbley] request[s] retest[ing] of the new, court-ordered samples of his bodily fluid." (Emphasis omitted.)

While the State alleges this request is too ambiguous to meet the statutory requirements, a movant need not be a forensic scientist or use scientific specificity to adequately make a request for DNA retesting. Wimbley identified the DNA from his court-ordered bodily fluid samples as the "DNA that was taken out of his body"—which is different from the DNA previously used from the unrelated case—for comparison to the DNA from the murder weapon. In the Kansas Supreme Court's prior denial of Wimbley's DNA retesting request, it stated that "Wimbley did not request testing of the new, court-ordered samples of his bodily fluids," which meant the retesting could not

18

produce noncumulative exculpatory evidence. 292 Kan. at 812. Here, however, Wimbley did request testing of the new, court-ordered samples. The reasoning by which the Kansas Supreme Court affirmed the denial of Wimbley's request for DNA retesting in his second 60-1507 motion does not apply to this fifth 60-1507 motion.

The State also appears to argue that perhaps the State does not actually or constructively possess the court-ordered DNA sample and Wimbley failed to assert facts—other than the undisputed fact that the court previously ordered the DNA collection—to show that the State actually or constructively possesses the DNA sample Wimbley requests be compared to the DNA from the murder weapon. It is unclear what more the State contends Wimbley is required to assert to demonstrate that the State actually or constructively possesses the DNA sample at issue, and the State fails to provide legal citation for the contention that Wimbley's current assertions are insufficient. Therefore, the district court erred in relying on the Kansas Supreme Court's decision in *Wimbley v. State*, 292 Kan. 796, to summarily deny Wimbley's request for DNA retesting in this motion.

CONCLUSION

This is Wimbley's fifth 60-1507 motion, and he again fails to overcome the procedural hurdles to warrant an evidentiary hearing regarding his claims of ineffective assistance of counsel. However, the district court erred in summarily denying Wimbley's request for DNA retesting. Wimbley's request for DNA retesting is not the same request made in his second 60-1507 motion and rejected by the Kansas Supreme Court. The district court's summary denial of Wimbley's fifth 60-1507 motion is affirmed, but Wimbley's request for DNA retesting under K.S.A. 21-2512 is reversed and remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded with directions.

19